[Crim. No. 2507. Second Appellate District, Division Two.—July 27, 1934.]

THE PEOPLE, Respondent, v. ARTHUR J. MULHERIN, Appellant.

Frederic H. Vercoe, Public Defender, and Richard F. Bird, Deputy Public Defender, for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

DESMOND, J.—Defendant was found guilty by a jury of "Violation Chapter 339, Laws of 1923, as amended, sec. 1, Act 1970, Deering's General Laws, Deadly Weapons Act, a felony, as charged in Count II of the information." His motion for a new trial was ordered denied and the appeal is from the judgment and order.

The information charged in count II that violation of the above-mentioned law was committed in this: that defendant "did wilfully, unlawfully and feloniously have in his possession what is commonly known as a 'black-jack' ". The defendant upon his trial admitted ownership of the instrument which the prosecution claims was properly described as a black-jack, but he contended at the trial and now contends that it is not a black-jack, and that the verdict therefore is contrary to and unsupported by the evidence and contrary to law.

Quoting from appellant's brief: "The instrument in question consists of a large number of metal washers strung upon a rawhide leather thong. The washers form two parallel masses, each approximately 3 inches long, with the rawhide strung through one mass and back through the other, and then knotted. The excess length of the rawhide forms a loop on the opposite side of the knot from the washers." The attorney-general in his brief has described the instrument as follows: "It is a collection of fifty-six metal washers, one inch in diameter, threaded upon two parallel narrow strips of leather or rawhide. The ends of the strip of leather or rawhide are then brought together and tied in a knot as close to the washers as possible, thus causing the washers to form a compact loop of metal of

considerable weight. The four ends of the rawhide or leather strips extend for seven and one-half inches behind the knot, forming a convenient and flexible handle. This handle is so tied that it can be looped over the wrist like the ordinary 'sap' or 'black-jack'.''

It will be seen from the above descriptions that the instrument consists of ''a mass of metal, fixed on a flexible handle, strap or the like'', which brings it within the definition of a ''slung-shot'' given in Webster's International Dictionary. A slung-shot, be it noted here, is not to be confused with a ''sling-shot'', i. e., a boy's toy or catapult. Reference to the case of *People* v. *Williams*, 100 Cal. App. 149 [279 Pac. 1040], also indicates that the article in question might properly be described as a slung-shot. In that case, there was found in the pocket of defendant an instrument which the jury impliedly determined was a slung-shot, described in the opinion as follows: ''A flat steel wrench about six inches in length and weighing approximately five ounces. In the same pocket was found a looped leather strap about twelve inches long, so contrived by means of wire and leather thongs as to allow the wrench to be placed in a pocket at one end, while the end forming the loop could be slipped over the wrist of the user and held in the hand.'' A black-jack is defined by Webster as ''a small leather-covered club or billy, weighted at the head and having an elastic shaft''.

With the instrument in question before us, we believe that under the quoted definitions it would be more correctly described as a slung-shot than as a black-jack. However, the Encyclopedia Britannica, fourteenth edition, quoted in *People* v. *Brown*, 253 Mich. 537 [235 N. W. 245, 82 A. L. R. 341], defines a black-jack as ''a bludgeon-like weapon consisting of a lead slug attached to a leather thong''; and we are not prepared to say, in view of this·definition, that this instrument is not *a kind* of black-jack. The Deadly Weapons Act provides that ''Every person who, within the state of California, . . . possesses any instrument or weapon *of the kind* commonly known as a black-jack, slung-shot, billy, sand-club, sand-bag or metal knuckles . . . shall be guilty of a felony, and upon conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor more than five years.'' (Italics ours.) All the

instruments mentioned, with the exception of metal knuckles, belong to a certain species of weapon having so many characteristics in common that their slight differences are unimportant. They are all, other than metal knuckles, short, easily concealed upon the person and so weighted as to constitute effective and silent weapons of attack. Any one of them, in our opinion, would be properly described by the general term, "sap", and we believe that a sand-bag, such as a piece of hose loaded with sand, is occasionally correctly described as a black-jack.

The use of language as applied to these weapons, all of the same class, is rather indefinite. It is significant that the legislature did not prohibit possession of a black-jack as such, a slung-shot, as such, a billy, as such, or of a sand-club, a sand-bag or even metal knuckles, as it might have done, but instead, and very likely with appreciation of the difficulties of nomenclature, forbade ownership of any instrument or weapon "of the kind", as commonly known. The purpose undoubtedly was to outlaw instruments which are ordinarily used "for criminal and improper purposes" (see *People* v. *Persce,* 204 N. Y. 397 [97 N. E. 877, 879], and our recent case, *People* v. *Ferguson,* 129 Cal. App. 300, 304 [18 Pac. (2d) 741]), and so we have in this act "a partial inventory of the arsenal of the 'public enemy', the 'gangster' " (see *People* v. *Brown, supra*), and a prohibition against owning anything "of the kind".

▮ Among the court's instructions to the jury was the following: "Chapter 339, Laws of 1923, as amended, sec. 1, Act 1970, in Deering's General Laws, provides in part as follows: 'every person who within the state of California possesses any instrument or weapon of the kind commonly known as a black-jack, slung-shot or billy shall be guilty of a felony'." Appellant claims error in this instruction, but since it conforms to the statute, we find it unobjectionable.

▮ It is claimed also that the trial court erred in giving the following instructions:

(a) "You are instructed that if you find from the evidence and beyond a reasonable doubt that on or about the date mentioned in the information, at and in the county of Los Angeles, this defendant had in his possession an instrument or weapon of the kind commonly known as a black-jack, or billy, you shall find the defendant guilty as charged in the information."

(b) " 'Billy' is defined as a bludgeon, as one for carrying in the pocket; a policeman's club. 'Black-jack' is defined as a short bludgeon consisting of a heavy head, as of metal, on an elastic shaft or with a flexible handle,'' and in refusing this instruction, requested by defendant:

"Under the law a black-jack is a leather covered billy or club weighted at the head and having a flexible shaft. Unless the instrument in evidence is such, you must find the defendant not guilty.''

It will be noticed that appellant, by the language of the above refused instruction, described a black-jack as a billy, but a leather-covered billy, while the court's definition of a billy merely described it as a bludgeon. From what we have said it may be seen that in our opinion a black-jack, while usually covered with leather, is not necessarily covered at all, and therefore the court's definitions, both of billy and black-jack, are approved. It follows that no error arose in the giving or refusing of instructions.

The Deadly Weapons Act provides in section 4 that "in no case shall any person punishable under the preceding sections of this act be granted probation by the trial court'', and we realize that appellant is now confined in a state prison as a result of his conviction. If we should accept his theory of defense, calling for a narrow construction of the terms of the section under which he was convicted, we would necessarily conclude, in the light of approved dictionary definitions, that if he were not guilty of possessing a black-jack he certainly was guilty of possessing a slung-shot; and the punishment is no more severe for the one offense than for the other. However, as we have indicated, the language of the section should be given a liberal construction, so long as no injustice results.

Judgment and order affirmed.

Stephens, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 10, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 23, 1934.