[Crim. No. 1454.   Third Appellate District.—February 29, 1936.]

THE PEOPLE, Respondent, v. ADOLPHO CANALES, Appellant.

George G. Olshausen and A. J. Harder for Appellant.

U. S. Webb, Attorney-General, and Neal Chalmers, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Defendant was charged with a violation of chapter 359 of the Statutes of 1925, as amended in 1931, commonly known as the Deadly Weapons Act, in that at a

certain time and place he ·did "unlawfully, maliciously, and feloniously possess an instrument or weapon of the kind commonly known as a black jack or billy". To this information defendant entered a plea of not guilty, and subsequently filed a demurrer thereto on the ground of uncertainty in that it did not appear therefrom whether defendant was charged with possessing a blackjack or a billy. The demurrer was overruled and the cause proceeded to trial, resulting in the conviction of the defendant as charged. This appeal is from such conviction.

The evidence in substance was that in the early morning of February 17, 1935, defendant with two others was stopped in his automobile on Main Street in the city of Jackson by the sheriff of Amador County. Canales was taken in the sheriff's car to the jail and the car of defendant was driven by a citizen by the order of the sheriff, to the courthouse, where it was searched and two weapons were found therein, one a club 14¼ inches long, thicker at one end than the other, with nails driven into the larger end and covered with tape. The other was a straight, smooth piece of wood about the thickness of a pick handle, eighteen inches long. The first of these instruments was found in the car of defendant under the rear seat and the other was lying on the front seat covered by a blanket.

■ The first point urged by defendant is that the allegation charging possession of a blackjack or billy is in the alternative and therefore the demurrer should have been sustained. It will be noted the statute defines the prohibited instruments or weapons not in specific terms but as being of a *kind* commonly known as a blackjack or billy. The definition is purposely broad, for, as stated in *People* v. *Mulherin,* 140 Cal. App. 212 [35 Pac. (2d) 174], the legislature did not prohibit the possession of a blackjack as such or a billy as such as it might have done, but instead and very likely with appreciation of the difficulties of nomenclature, forbade ownership of any weapon of that *class;* the purpose being to outlaw instruments which are ordinarily used for criminal and unlawful purposes. The court did not err, therefore, in overruling the demurrer.

■ Defendant contends that the particular weapons introduced in evidence were neither blackjacks nor billies, nor of that class nor kind. The courts have on occasions, attempted to define in general terms what is meant by "billy"

and "black jack". In *People* v. *Williams*, 100 Cal. App. 149 [279 Pac. 1040], quoting from Webster's Dictionary, black-jack is defined "as a small leather covered club or billy, weighted at the end and having an elastic shaft. . . ." In *People* v. *Mulherin, supra,* "black jack is defined as a short bludgeon consisting of a heavy head, as of metal on an elastic shaft or with a flexible handle. . . . "

So appellant would have us say that the two exhibits received in evidence are not the kind of instruments prohibited by the statute because of their shape and size, and particularly because the instruments offered in the instant case are too long to be concealed upon the person. In the first place we cannot say as a matter of law that a club of the diameter of a pick handle, eighteen inches in length, cannot be concealed upon the person, but would be inclined to take judicial knowledge of the fact that such an instrument can be concealed upon the person. However, we do not believe that the element is a governing quantity in such a weapon. Appellant attempts to read into the statute and apply to instruments of a kind commonly known as blackjacks or billies, the ability to conceal upon the person, but in the title to the act and in the text itself the question of concealment on the person is applicable only to pistols, revolvers, explosive substances, dirks and daggers.

Another objection by appellant is that the court erred in its instruction in regard to these instruments. The trial court after quoting various definitions of billies and black-jacks, instructed the jury: "The court instructs you that the instruments before you are within the purview of the instruments announced in the code." Appellant construes this as an instruction to find for the People on the issue whether the clubs were within the statute. A reading of the instruction discloses the court did not so instruct the jury that the instruments in evidence were weapons prohibited by the act, but merely told them that such instruments were within the field or scope of the act, leaving it for the jury to declare whether these particular clubs actually were illegal weapons. It was, however, within the province of the court to determine in the first instance whether they were such weapons as fell within the purview of the statute.

It is next alleged that errors occurred during the selection of the jury. For some time prior to the arrest of

defendant and continuing during the trial, a strike was going on among the gold miners of the Jackson area, and defendant himself was a miner out on strike. The court allowed the prosecution and defense, at the beginning of the examination of jurors, to inquire of them on their *voir dire* as to any prejudice they might have regarding the strike and their sympathy or animus toward the strikers. Later, however, the court on its own motion refused to allow further questions in regard to the strike. The court also refused to allow the defense to inquire of prospective jurors their relation, if any, to the American Protective League. What the American Protective League was or its connection with the case did not appear.

The defendant was charged with the possession of a certain weapon. The fact of the existence of a strike in the community or their possible membership in some unknown league was not relative to the charge. This line of examination of appellant was an exploration for the purpose of arriving at a decision as to whether a peremptory challenge should be exercised. As was held in the case of *People* v. *Ecton,* 29 Cal. App. 478 [156 Pac. 996], and other cases in line with that case, such an examination may properly be restricted to those matters upon which a challenge for cause could be interposed. The prospective jurors were examined at length by counsel and each juror accepted testified that he had no opinion as to the guilt or innocence of the defendant, and that he could fairly and impartially try the case, and it appears from the record that they did so. It further appears appellant did not exhaust all of the peremptory challenges allowed him by law.

In *People* v. *Edwards,* 163 Cal. 752 [127 Pac. 58], the court there said, and it is still applicable to-day, "The records of the cases appealed to this court in which rulings made while impaneling a jury have been involved, indicate that there is an increasing tendency to prolong the proceedings inordinately by allowing counsel on either side to indulge in tedious examinations of jurors, apparently with no definite purpose or object in view, but with the hope of eliciting something indicating the advisability of a peremptory challenge, and that the supposed privilege of doing this has been greatly abused." We do not believe the trial court unduly limited counsel in their examination of the prospective jurors on their *voir dire.*

■ Appellant cites several alleged errors which occurred during the trial, the principal one being in regard to evidence of the commission of other offenses by appellant. Appellant claims that he was charged with the possession of a prohibited weapon which involved no specific intent, and the other offenses admitted were, first, engaging in a fight some two months previous to the trial; secondly, telling a strike breaker, "You are not going to last very long on that job, we are going to fix you fellows"; thirdly, drawing a knife on a strike breaker, and fourthly, driving in front of a boarding house catering to employed miners, and shouting vile names to the proprietors.

It is the claim of appellant that these "other offenses" are so different in their elements to the offense for which he was on trial that it was error to admit them.

It will be recalled that appellant denied possession or ownership of the weapons in evidence, intimating they had been planted in the car; therefore where there is a denial of the possession of the instrument any evidence which tends to show a motive or reason to possess such an instrument is admissible as bearing upon the fact of possession.

■ Another citation of error was the refusal of the court to permit defendant to question a witness for the prosecution as to whether he was on probation at the time of his testifying, claiming that a witness on probation stands in fear of the district attorney, and might, to obtain his favor, be inclined to testify favorably to the prosecution. The objection was properly sustained. A person who is granted probation by the court and is answerable to the court alone, is under no obligation of any kind whatsoever to the district attorney, and the fact of probation was neither material nor relevant.

■ Complaint is made also of an order of the court striking out the testimony of a witness who testified he was present, standing about six feet back of the car of defendant, when it was searched, and saw a Mr. Gibson enter the car and "presumed he was feeling for something on the seat. He was patting on the cushions. . . . I could see his back there." The testimony was properly stricken out as being the conclusion of the witness.

■ Complaint is made of the following: During the examination of a witness for the defense, the court addressing the witness said: "And if you don't tell the truth you are

liable to prosecution for perjury. Now you are not telling the whole truth." To this statement Mr. Olshausen, attorney for defendant, objected, and asked the court to instruct the jury to disregard the court's remarks. To which the court replied: "The jury will disregard the court's remarks." At the conclusion of the trial the court also instructed the jury that they were the exclusive judges of the weight of evidence and credibility of witnesses, and that the court had not expressed nor intended to express any opinion as to what witnesses were or were not worthy of credence, and if any expression of the court during the trial seemed to indicate an opinion relating to any matters in issue it was to be disregarded. In view of the admonitions and instructions of the court it cannot be said that the remark inadvertently made by the court constituted prejudicial error.

Numerous other citations of alleged error are set forth in the well-prepared brief of appellant, but having considered the many points raised we are convinced that none of the allegations of error justify a reversal. A jury without passion or prejudice found the defendant guilty, and a study of the record and of the many assignments of error convinces us that there was not a miscarriage of justice.

The judgment and order appealed from should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 16, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1936.