[Crim. No. 8166. In Bank. Dec. 2, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN WILSON GRUBB, Defendant and Appellant.

Michael F. Perrett, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, Edwin M. Osborne, Chief Criminal Deputy District Attorney, and Edwin L. Laing, Deputy District Attorney, for Plaintiff and Respondent.

TOBRINER, J.—A jury found that defendant, in violation of Penal Code section 12020, possessed a weapon of a kind commonly known as a billy; the court entered a judgment of conviction. Section 12020 provides, in part, as follows: ''Any person in this State who manufactures or causes to be manufactured, imports into the State, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, sawed-off shotgun, or metal knuckles . . . is guilty of a felony. . . .''

We point out our reasons for concluding that although the

statements which defendant gave to the police about his possession and use of the billy should not have been admitted and their admission caused prejudicial error,[1] defendant's other chief contentions cannot be sustained. We find that the officers did not discover the billy by means of an illegal entry into defendant's car; we hold that section 12020 does not fail for unconstitutional vagueness.

About 10:30 p.m., March 25, 1963, two Ventura County deputy sheriffs came upon a 1955 Pontiac convertible displaying no lights, parked on the wrong side of the road, and protruding at an angle some 2 or 3 feet into the main traveled portion of a two-lane highway. Because the position of the car created a traffic hazard, the officers stopped to investigate. On the windshield the officers found an unsigned note explaining that the driver had encountered mechanical difficulties and would return for the car. The note bore no date; because of its moist condition the officers could not determine how long the note, or indeed the car, had been so abandoned.

One of the officers looked into the window of the vehicle and could not detect a registration slip either on the steering column, the sun visor or on any other visible place. He then entered the car to look for the slip; the other officer, after checking with headquarters to see if the license number was that of a wanted car, joined him in the car. While looking for the slip the officers discovered a small baseball bat. The last few inches of the handle had been broken from the bat; the instrument was 20 inches long, taped at the smaller or handle end, and heavier at the unaltered end.[2] After this discovery the officers proceeded to a nearby service station. There they found defendant who, upon interrogation, identified himself as the driver of the car. Defendant, however,

[1] At oral hearing of this case we noted that the decisions in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], raised an issue as to the propriety of the admission of defendant's statements to the police officers. Since these cases had not been decided at the time of the trial of this case, we permitted the point to be presented by oral argument and written submission of authorities.

[2] The testimony of the various witnesses throws no light on whether the tape was a portion of the bat as originally manufactured or was placed on it after the bat had been broken. The prosecution introduced the object into evidence; it is now before us. The tape is of the same type, and in the same position, as it would ordinarily be on any baseball bat; it appears to have been torn at the point where the bat was broken. In order to keep the large piece from unravelling, an additional, but short, piece of tape evidently has been added to the torn end. Neither piece of tape extends into or covers the broken portion of the wood.

denied any knowledge of any baseball bat or "billy" being in the car. The officers then arrested defendant and took him to the station.

The next day, March 26, 1963, Detectives McCarty and Murphy interrogated defendant at the Ventura County sheriff's office. During the period of interrogation defendant told the officers that he owned the broken bat, that he had possessed it for approximately two years, that he had carried it in other automobiles for use in self-defense, and that he had struck people with it on at least two occasions.

The interrogation occurred after the officers had found the bat in defendant's car and after the officers had arrested him. The officers testified at the trial that in their opinion the broken bat was a "billy." The questioning took place at the sheriff's office; two officers conducted it; one of the officers testified "the conversation was rather lengthy," and the officers recorded it on tape. These circumstances demonstrate that the officers were engaged in a process of interrogation that lent itself to eliciting incriminating statements. (*People* v. *Stewart* (1965) 62 Cal.2d 571, 576 [43 Cal.Rptr. 201, 400 P.2d 97].) Consequently, the accusatory or critical stage had been reached; defendant was entitled to counsel. (*Id.* at p. 577.)

The record does not indicate that prior to making his statements, defendant had been advised of his rights to counsel and to remain silent or that he had otherwise waived those rights. In the absence of such a waiver we must hold that defendant's statements, rendered during the accusatory stage, were improperly admitted. (*People* v. *Stewart, supra,* 62 Cal.2d 571; *People* v. *Dorado, supra,* 62 Cal.2d 338.)

Whether or not defendant's statements constituted a confession requiring reversal (*People* v. *Schader* (1965) 62 Cal.2d 716 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Dorado, supra,* 62 Cal.2d 338, 356), the utterances clearly caused prejudicial error. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]; *Fahy* v. *Connecticut* (1963) 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171].) Defendant admitted he owned the bat; he said he had possessed it for approximately two years; he carried it in his other automobiles for use in self-defense; he had struck people with it on at least two occasions; he called the bat a "billy." These statements set forth the very elements that convert the broken bat otherwise usable for peaceful purposes into the kind of instrument proscribed by the statute. As we shall point out in defining the

statutory coverage, defendant's description of the object placed it precisely into the statutory design. The statements were accordingly pointedly prejudicial.

▇ As to defendant's claim of an alleged unlawful police entry of the vehicle, we point out that we have recognized that officers need not invariably and under every circumstance obtain a search warrant to enter an automobile. (*People v. Terry* (1964) 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381].) We have upheld an entry without a warrant if "compelling reasons and exceptional circumstances" justify it. (*People v. Burke* (1964) 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67]; see *McDonald v. United States* (1948) 335 U.S. 451, 454 [69 S.Ct. 191, 93 L.Ed. 153].) Although the justification for a search without a warrant usually lies in its incidence and relationship to a lawful arrest (*Preston v. United States* (1964) 376 U.S. 364 [84 S.Ct. 881, 11 L.Ed.2d 777]; *People v. Burke, supra*), here we find the warrantless entry sustained by extraordinary and exceptional circumstances. (See *Hernandez v. United States* (9th Cir. 1965) 352 F.2d 240 (No. 19654, October 29, 1965).)

The car was apparently abandoned at night. It was parked on the wrong side of the road. It protruded into the traveled portion of a highway, creating a traffic hazard to oncoming motorists.[3] The officers, looking through the windows, saw no registration slip.[4] In view of these unusual facts, which raised the probability that the car had been stolen, the officers could properly exercise the authority given by Vehicle Code section 2805[5] and enter the car to investigate the title and registration. (*People v. Simons* (1962) 208 Cal.App.2d 83, 87 [25 Cal.Rptr. 57]; see *Mardis v. Superior Court* (1963) 218 Cal.App.2d 70,

---

[3]Defendant had left the car in apparent violation of Vehicle Code section 22504, subdivision (a), and Ventura County Ordinance Code section 7144, both of which set up somewhat detailed parking regulations.

[4]The failure to place a visible registration slip in the car violates Vehicle Code section 4454, which provides: "(a) Every owner upon receipt of a registration card shall write his signature thereon in ink in the space provided and shall place and thereafter maintain the same or a facsimile copy thereof in a suitable container and shall securely fasten the container and card in the driver's compartment of the vehicle for which issued in a position so that at least that portion of the registration card, or facsimile copy thereof, containing the name and address of the registered owner and the license number of the vehicle shall be plainly visible and legible from the outside of the vehicle. . . ."

[5]That section provides: "A member of the California Highway Patrol may inspect any vehicle of a type required to be registered under this code on a highway, or in any public garage, repair shop, parking lot, used car lot, or other similar establishment, for the purpose of locating stolen vehicles or investigating the title and registration thereof."

74 [32 Cal.Rptr. 263]; *People* v. *Anushevitz* (1960) 183 Cal. App.2d 752, 755 [6 Cal.Rptr. 785]; *People* v. *Galceran* (1960) 178 Cal.App.2d 312, 316 [2 Cal.Rptr. 901]; cf. *Caldwell* v. *United States* (8th Cir. 1964) 338 F.2d 385, 387.)

The instant facts give rise to one of "the exceptions to the constitutional rule that a search warrant must be had before a search may be made." (*People* v. *Burke, supra,* 61 Cal.2d 575, 579.) A requirement that under circumstances such as these the officers must leave the car on the highway while they obtain a search warrant would abort their efforts to protect the safety of the highways. (*Mardis* v. *Superior Court, supra,* 218 Cal.App.2d 70, 73.)[6]

Finally, we cannot accept defendant's assertion of the unconstitutionality of Penal Code section 12020 under article I, section 13, of the California Constitution and the Fourteenth Amendment to the United States Constitution. Section 12020 condemns the possession "of an instrument or weapon of the kind commonly known as a . . . billy." Challenging the term "billy" as unconstitutionally vague, defendant becomes the first litigant to raise this issue; other courts have upheld convictions for possession of billys (e.g., *People* v. *Canales* (1936) 12 Cal.App.2d 215 [55 P.2d 289]; *People* v. *Mulherin* (1934) 140 Cal.App. 212 [35 P.2d 174]). As we shall explain, the statutory language can withstand the assault of constitutional infirmity.

We recognize, and apply here, the orthodox test. "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (*Connally* v. *General Constr. Co.* (1926) 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322]; see *In re Newbern* (1960) 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].)

Defendant complains that under that test the statute must fail because a man of common intelligence cannot know if he violates its prohibition in view of its sweeping coverage. The contention runs that the term "billy" encompasses such ordinary objects as an orthodox baseball bat, a table leg, or a piece of lumber; even though these objects find their most

---

[6]As defendant objects only to the initial entry into his automobile, we do not here delineate the scope of the search that the officers might properly conduct in such a situation.

620

common use in a peaceful and traditionally acceptable way, all of them could be used as weapons of physical violence.[7]

We must construe the enactment, however, in the light of the legislative design and purpose. (*In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *King* (1952) 115 Cal.App.2d Supp. 875, 878 [252 P.2d 78].) The Legislature obviously sought to condemn weapons common to the criminal's arsenal; it meant as well "to outlaw instruments which are ordinarily used for criminal and unlawful purposes." (*People* v. *Canales, supra,* 12 Cal.App.2d 215, 217; to the same effect, *People* v. *Mulherin, supra,* 140 Cal. App. 212, 215.) The Legislature's understandable concern with the promiscuous possession of objects dangerous to the lives of members of the public finds manifestation in section 12020. Easy access to instruments of violence may very well increase the risk of violence. Hence we must, if possible, sustain the constitutionality of a statute designed for the salutary purpose of checking the possession of objects subject to dangerous use.

The terms of the statute gain content and definition by reference to this purpose. ██ Indeed, as we said in *People* v. *McCaughan, supra,* 49 Cal.2d 409, 414, "A statute will be upheld if its terms may be made reasonably certain by reference to . . . its legislative history or purpose." ██ The Legislature here sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harm-

---

[7]The California convictions have been for possession of objects whose likely criminal use clearly appears from the character of the weapon alone (*People* v. *Anushevitz, supra,* 183 Cal.App.2d 752 [12-inch length of hose, weighted and taped]; *People* v. *Hood* (1957) 149 Cal.App.2d 836 [309 P.2d 135] [14-inch billy club]; *People* v. *Canales, supra,* 12 Cal.App.2d 215 [14-inch club, taped, with nails driven into one end; also 18-inch piece of wood]; *People* v. *Quinones* (1934) 140 Cal.App. 609 [35 P.2d 638] [homemade metal knuckles]; *People* v. *Mulherin, supra,* 140 Cal.App. 212 [56 one-inch metal washers strung together]; *People* v. *Ferguson* (1933) 129 Cal.App. 300 [18 P.2d 741] [metal knuckles]; *People* v. *Williams* (1929) 100 Cal.App. 149 [279 P. 1040] [flat steel wrench 6 inches long, with attachable leather strap for grasping]). In *People* v. *Golden* (1946) 76 Cal.App.2d 769 [174 P.2d 32], the court held that a "monkey's fist," an object used by sailors, was not outlawed by the statute. Cases from other jurisdictions (*People* v. *McPherson* (1917) 220 N.Y. 123 [115 N.E. 515]; *People* v. *Visarities* (1927) 220 App. Div. 657 [222 N.Y.S. 401]) are in conflict and therefore offer little assistance.

less, purpose.[8] (Cf. *People* v. *Freeman* (1927) 86 Cal.App. 374, 376 [260 P. 826].)

Thus we hold that the statute embraces instruments other than those specially created or manufactured for criminal purposes; it specifically includes those objects "of the *kind* commonly known as a billy." (Pen. Code, § 12020; italics added.) The concomitant circumstances may well proclaim the danger of even the innocent-appearing utensil. The Legislature thus decrees as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger. Accordingly the statute would encompass the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a "tough" neighborhood to the scene of a riot. On the other hand the section would not penalize the Little Leaguer at bat in a baseball game.

Applying this test to the instant case, we find the possession of the altered baseball bat, taped at the smaller end, heavier at the unbroken end, carried about in the car, obviously usable as a "billy," clearly not transported for the purpose of playing baseball, violates the statute.

We recognize that the presence of suspicious circumstances attendant to possession of the proscribed object does not forge an ironclad case against defendant. He may be able to demonstrate an innocent usage of the object but the burden falls upon him to do so.[9] *In re Cregler, supra,* 56 Cal.2d 308, illus-

---

[8] We adopt a test defining the term "billy" similar to that in *People* v. *Raleigh* (1932) 128 Cal.App. 105 [16 P.2d 752]. The court there construed the term "dangerous or deadly weapon," as used in Penal Code section 211a, to encompass, first, instruments dangerous in their ordinary use and, second, in some circumstances, instruments not dangerous in their ordinary use. Possibly the instant baseball bat has been so altered from its original condition that it falls into the first category: it would then ordinarily be used as a classic billy. In that case defendant cannot rest upon hypothetical fact situations to challenge the constitutionality of the statute. (*Franklin Life Ins. Co.* v. *State Board of Equalization* (1965) *ante*, pp. 222, 227 [45 Cal.Rptr. 869, 404 P.2d 477]; *People* v. *Buese* (1963) 220 Cal.App.2d 802, 805 [34 Cal.Rptr. 102]; *People* v. *Ferguson, supra,* 129 Cal.App. 300, 304.)

[9] The prosecution need not show the intent of the possessor to use an instrument in a violent manner. (*People* v. *McKinney* (1935) 9 Cal. App.2d 523, 525 [50 P.2d 827].) A defendant, on the other hand, may justify his possession of an instrument found under suspicious circumstances by proof of his intent to use it in accordance with its ordinary legitimate design. Although in *People* v. *Ferguson, supra,* 129 Cal.App. 300, the court refused to permit the jury to consider defendant's statement that he kept the "metal knuckles" as a curio and not for dangerous purposes, that case may be distinguished; "metal knuckles" are not ordinarily usable for peaceful purposes.

Once defendant has put in issue his planned and intended use of the

trates the point: there a statute (former Pen. Code, § 647, subd. 4) made it unlawful for a person of a specified classification "having no visible or lawful means of support" to "loiter" at named public places. Upon challenge that the word "loiter" was unconstitutionally vague, we limited its meaning in accordance with the statutory purpose, holding it "obviously connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered." (P. 312.) But we recognized a limitation of the application of the statute, saying "Manifestly one who goes to a bus station or railroad depot and waits for the purpose of buying a ticket, boarding the conveyance, meeting a relative or friend actually expected to arrive, or with any other legitimate objective, is not loitering within the sense of the statute." (P. 312.) In the present case defendant has offered no correlative showing of innocent usage of the proscribed instrument. Conceived for peaceful purposes, it was wrapped in the indicia and circumstance of probable assault.

The judgment is reversed.

Traynor, C. J., Peters, J., and Peek, J., concurred.

SCHAUER, J.,* Dissenting.—Accepting the facts and law as adjudged by the majority I would affirm the judgment of conviction.

The majority hold: "Applying this [the theretofore defined] test to the instant case, we find the possession of the altered baseball bat, taped at the smaller end, heavier at the unbroken end, carried about in the car, obviously usable as a 'billy,' clearly not transported for the purpose of playing baseball, violates the statute.

"We recognize that the presence of suspicious circumstances attendant to possession of the proscribed object does not forge an ironclad case against defendant. He may be able to demonstrate an innocent usage of the object but the burden falls upon him to do so."

---

instrument the People may introduce evidence tending to negate the possibility of a peaceful use by showing, for instance, the utilization of the instrument as a weapon in the past. (Cf. *People* v. *Raleigh* (1948) 83 Cal.App.2d 435, 442 [189 P.2d 70].) We note, however, that in the instant case the prosecution introduced evidence of a prior arrest to support a violation of Penal Code section 12020. An arrest not followed by a conviction does not itself tend to show a past offense; the evidence should have been excluded. (*People* v. *Terry, supra,* 61 Cal.2d 137, 149.)

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Clearly, the case against this defendant is prima facie established by the circumstances which were matters of record or manifest to the eyes of the officers. Although those circumstances did "not forge an ironclad case against defendant" the burden was on him "to demonstrate [or at least raise a reasonable doubt as to] an innocent usage of the object."

I find nothing whatsoever adduced by defendant, or otherwise in the record, which could reasonably support a not guilty verdict or, on this appeal, justify our concluding that the guilty verdict works a miscarriage of justice. Defendant simply did not overcome the basic case against him; nor does he (or the majority opinion) point to any evidence which within reason justifies a doubt as to his guilt. His fabricated exculpatory story whereby he sought to negate *knowing* (notwithstanding *actual*) possession of the billy was manifestly implausible. Such a story tends more to accentuate moral cognizance of guilt than to weaken the inferences indubitably following from the corporeal factors which are undisputed and which, unless overcome, demonstrate guilt. In these circumstances I do not understand how this court can find—even if a majority declare technical error—that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Absent such an *affirmative* finding we are unequivocally forbidden by California Constitution, article VI, section 4½[1] to "set aside" the judgment or grant a new trial. Accordingly, I would affirm the judgment.

McComb, J., concurred.

Respondent's petition for a rehearing was denied January 12, 1966. Mosk, J., did not participate therein. McComb, J., Burke, J., and Schauer, J.,* were of the opinion that the petition should be granted.

---

[1] "Section 4½. No judgment shall be set aside, or new trial granted, in any case, on the ground of mis-direction of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.