166 Cal.App.4th 801 (2008)
In re DAVID V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
DAVID V., Defendant and Appellant.
No. B203840.
Court of Appeals of California, Second District, Division Five.
September 8, 2008.
*804 John A. Colucci, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
ARMSTRONG, J.
The juvenile court sustained two petitions against appellant, David V., one alleging that he possessed metal knuckles in violation of Penal Code section[1] 12020 and the other alleging that he possessed a weapon on school grounds in violation of section 626.10, subdivision (a). Appellant was declared a ward of the court and was placed in the Camp Community Placement program for a midterm program of six months.
Appellant appeals from the order sustaining the petition alleging possession of metal knuckles and adjudging him a ward of the court. He contends that the juvenile court improperly admitted expert testimony and that there is insufficient evidence to support the court's finding that he possessed metal knuckles. Additionally, appellant contends that the juvenile court failed to declare the offense a felony or misdemeanor, as required by statute. We affirm the trial court's orders in all respects.

*805 FACTS
Appellant was riding a bicycle when Police Officer Thomas Appleby stopped him. Upon searching appellant, Officer Appleby recovered a bicycle footrest[2] from his rear pants pocket. The footrest was a cylindrical object, approximately three and a half inches long and an inch and a half in diameter, designed for attachment to a bicycle. Although the system of attachment appeared fairly basic, Officer Appleby was unable to affix the footrest to the bicycle appellant was riding. Officer Appleby could not locate a common device by which to secure the footrest to the bicycle, nor could he find a place on the bicycle where the footrest could be attached. There were no other footrests already attached to appellant's bicycle.
At trial, Officer Appleby was presented as a gang expert and testified that bicycle footrests are commonly used as metal knuckles. He explained that, with the cylindrical object placed in the hand with the fingers rolled over it, it can be used "as an impact punching device to further the effect of punching."

DISCUSSION

I. Expert Testimony

Appellant contends the juvenile court erred in admitting certain portions of Officer Appleby's testimony. First, appellant argues that the juvenile court should not have permitted Officer Appleby to testify that the bicycle footrest appellant possessed is an item commonly used as metal knuckles. Appellant argues that such evidence was not probative of his knowledge or intent and was therefore irrelevant. Second, appellant contends that the juvenile court should have excluded Officer Appleby's testimony that the bicycle footrest could be grasped in the hand and used as an "impact punching device." Appellant argues that this testimony did not concern a matter outside common knowledge and should therefore have been excluded as being beyond the scope of proper expert testimony. Finally, appellant argues that the juvenile court improperly relied on the admitted expert gang evidence as proof of his intent.

A. Forfeiture

At the juvenile court hearing, appellant objected to portions of Officer Appleby's direct examination testimony on grounds that it lacked foundation *806 and was narrative. Appellant also objected to the "entire line of questioning" based on relevancy. The Attorney General argues that these objections failed to sufficiently preserve the claims appellant now raises on appeal and, thus, that appellant forfeited his right to make such arguments.
Under Evidence Code section 353, subdivision (a), "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless [¶] ... [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion...." A defendant may not, however, "argue on appeal that the court should have excluded the evidence for a reason not asserted at trial." (People v. Partida (2005) 37 Cal.4th 428, 431 [35 Cal.Rptr.3d 644, 122 P.3d 765], original italics.)
Here, appellant never objected during trial that Officer Appleby's testimony exceeded the scope of permissible expert testimony or did not concern a matter outside common knowledge. Thus, the juvenile court was never given the opportunity to consider the admissibility of the evidence on these grounds. Appellant's claim that the admitted evidence exceeded the limits of permissible expert testimony is thereby forfeited.
Appellant relies on People v. Lewis (1990) 50 Cal.3d 262, 282 [266 Cal.Rptr. 834, 786 P.2d 892], in arguing that this court should nonetheless consider the forfeited claim on the merits in order "to forestall an ineffectiveness of counsel contention." However, nothing in Lewis suggests that our Supreme Court intended to establish a rule by which all forfeited claims must be considered on the merits where an ineffectiveness of counsel claim is the likely alternative. The Court emphasized in the recent case of People v. Richardson (2008) 43 Cal.4th 959, 984, footnote 11 [77 Cal.Rptr.3d 163, 183 P.3d 1146], that, despite having made past exceptions to the forfeiture doctrine, "we have never held that forfeiture is inapplicable to an entire class of cases...." We thus decline to apply the Lewis exception to the forfeiture doctrine in this case.
The forfeiture doctrine does not apply to appellant's relevancy claim, however. The relevancy argument raised on appeal does not invoke facts or legal standards different from those the trial court itself was asked to apply when considering appellant's objection to the prosecutor's entire line of questioning. (See People v. Yeoman (2003) 31 Cal.4th 93, 117 [2 Cal.Rptr.3d 186, 72 P.3d 1166].) Thus, consistent with the Fifth Appellate District's ruling in People v. Bailes (1982) 129 Cal.App.3d 265, 273, footnote 2 [180 Cal.Rptr. 792], we hold that appellant's trial objection on grounds of relevancy sufficiently preserved the relevancy argument he now raises on appeal.

*807 B. Admission of Expert Testimony

Appellant argues that Officer Appleby's testimony regarding the common usage of bicycle footrests as metal knuckles should have been excluded on grounds of relevancy because past acts by other persons are not probative of his intent. The Evidence Code defines relevant evidence as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "Whether offered evidence is relevant is an issue the determination of which involves an exercise of judicial discretion by the trial court, and its conclusion in the premises will be sustained on appeal unless an abuse of discretion is shown." (People v. Diamond (1970) 10 Cal.App.3d 798, 801 [89 Cal.Rptr. 126].)
Appellant's relevancy argument is well-taken. However, as the Attorney General points out, the fact that bicycle footrests are commonly used as weapons increases the likelihood that such an object would be carried by any person as a weapon. While Officer Appleby's testimony may not have served as conclusive proof of appellant's mental state, it was, at the least, minimally probative of his intent. Thus, we cannot conclude that the juvenile court abused its discretion in admitting the testimony in question.
Appellant also argues that the court improperly relied on Officer Appleby's testimony as proof of his intent. Appellant cites People v. Killebrew (2002) 103 Cal.App.4th 644, 658 [126 Cal.Rptr.2d 876], and In re Frank S. (2006) 141 Cal.App.4th 1192, 1197-1198 [46 Cal.Rptr.3d 839], for the proposition that an expert witness offering gang evidence may not testify to a criminal defendant's mental state. While this is no doubt true, neither of the cases cited by appellant is applicable to the instant case. A more parallel case is that of People v. Gonzalez (2006) 38 Cal.4th 932, 947 [44 Cal.Rptr.3d 237, 135 P.3d 649], in which our Supreme Court held that testimony regarding the common practices of gang members was properly admitted by the trial court. The fact that the testimony, coupled with other evidence, might lead the jury to conclude that the defendant had engaged in the same behavior made the testimony probative, not inadmissible. (Id. at pp. 944-947.)
Unlike the expert witnesses in People v. Killebrew, and In re Frank S., Officer Appleby never directly testified to what he believed appellant's mental state to be at the time he arrested appellant for weapon possession. Instead, like the gang expert in People v. Gonzalez, his testimony was limited to common practices of which he was aware based on his experience. Consistent with Gonzalez, we hold that Officer Appleby's testimony was properly admitted by the juvenile court and considered by the trier of fact. Since the trial court did not err in its admission of any of the evidence *808 appellant contests on appeal, we now review appellant's sufficiency of the evidence claim in light of all evidence admitted at trial.

II. Sufficiency of the Evidence

Appellant contends that there is insufficient evidence to support the judgment that he possessed metal knuckles within the meaning of section 12020, subdivision (a). On an "appeal challenging the sufficiency of the evidence to support a juvenile court judgment sustaining the criminal allegations of a petition made under the provisions of [Welfare and Institutions Code] section 602 ... [the reviewing court] must apply the same standard of review applicable to any claim by a criminal defendant challenging the sufficiency of the evidence to support a judgment of conviction on appeal." (In re Ryan N. (2001) 92 Cal.App.4th 1359, 1371 [112 Cal.Rptr.2d 620].) In reviewing the sufficiency of the evidence, "courts apply the `substantial evidence' test. Under this standard, the court `must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidencethat is, evidence which is reasonable, credible, and of solid valuesuch that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (People v. Cuevas (1995) 12 Cal.4th 252, 260-261 [48 Cal.Rptr.2d 135, 906 P.2d 1290].) "The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] `Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. "`If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]'" (People v. Stanley (1995) 10 Cal.4th 764, 792-793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)
Appellant argues, first, that there was insufficient evidence to support the juvenile court's determination that the bicycle footrest found in his possession fit within the statutory definition of "metal knuckles." Second, he claims that there is insufficient evidence to establish the necessary mens rea to sustain his conviction.

A. Statutory Definition

(1) "When interpreting a statute, `we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] If the language permits more than one reasonable interpretation, then the court looks `to a variety of extrinsic aids, including the ostensible objects to be achieved, the *809 evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] In the end, `[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (People v. Rubalcava (2000) 23 Cal.4th 322, 328 [96 Cal.Rptr.2d 735, 1 P.3d 52].)
Section 12020 was first enacted in 1953 and has since been amended many times. Originally, subdivision (a)(1) of the former statute prohibited possession of "any instrument or weapon of the kind commonly known as ... metal knuckles," but otherwise provided no definition of the term "metal knuckles." (§ 12020, former subd. (a).) In 1984, in what is now section 12020, subdivision (c)(7), the California Legislature specifically defined "metal knuckles" as "any device or instrument made wholly or partially of metal which is worn for purposes of offense or defense in or on the hand and which either protects the wearer's hand while striking a blow or increases the force of impact from the blow or injury to the individual receiving the blow. The metal contained in the device may help support the hand or fist, provide a shield to protect it, or consist of projections or studs which would contact the individual receiving a blow." (Stats. 1984, ch. 1414, §§ 3-4, pp. 4972, 4975.) In 1988, the Legislature amended subdivision (a)(1) to prohibit possession of "any metal knuckles," rather than only those instruments or weapons "of the kind commonly known as ... metal knuckles."[3] (Stats. 1988, ch. 512, §§ 1-2, pp. 1930, 1934.)
Appellant contends that the current statute's use of the word "worn" in its definition of metal knuckles requires that the prohibited item be affixed to the hand. (§ 12020, subd. (c)(7).) Appellant argues that the inclusion of the word "worn" indicates that the Legislature sought to prohibit weapons that cannot be easily dislodged during a fight and that are, thus, particularly dangerous. Because a bicycle footrest is not attached to the hand when used as a weapon, *810 appellant argues, it does not possess the necessary characteristic to fall within the statutory definition of metal knuckles.
(2) However, the Legislature specifically drafted the statute in the alternative, defining metal knuckles as a weapon "worn ... in or on the hand." (§ 12020, subd. (c)(7).) This fact indicates that the Legislature intended the statute to reach objects held in a closed fist, as well as those weapons that can be attached to the hand. If appellant were correct that an object must be attached to the hand to be metal knuckles, metal knuckles could always be defined as objects worn "on the hand." There would be no need for the alternative definition placing metal knuckles "in ... the hand." The fact that the Legislature included objects "worn ... in ... the hand" in the statutory definition of metal knuckles indicates that it intended the definition to reach objects such as bicycle footrests that could be held in the hand and used "for purposes of offense or defense." (§ 12020, subd. (c)(7).)
Division Six of our appellate district reached a parallel conclusion in In re Martin Alonzo L. (2006) 142 Cal.App.4th 93, 95 [47 Cal.Rptr.3d 316], in considering whether substantial evidence supported the conviction of a juvenile arrested for possession of a wallet decorated with metal spikes. While the court's analysis focused primarily on whether the defendant possessed the requisite intent, it noted that the wallet could be used as metal knuckles if held in a closed fist with the spikes protruding between the fingers. (Ibid.) Thus, although the item could not be affixed to the hand, it could be used "`for purposes of offense or defense'" when held in the hand and therefore fell within the statutory definition of metal knuckles. (Id. at p. 96.)
Per the statute itself, the Legislature intended to prohibit those objects that, when used as weapons, would "protect[] the wearer's hand while striking a blow or increase[] the force of impact from the blow or injury to the individual receiving the blow." (§ 12020, subd. (c)(7).) Had the Legislature's concern been the prohibition of weapons that would not be easily dislodged during a fight, one would expect such a description of metal knuckles to appear in the statutory definition. Additionally, the repeated amendments to the statute indicate the Legislature's intent to increasingly broaden its scope. Through section 12020, "[t]he Legislature ... sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object" when carried for purposes of use as a weapon. (People v. Grubb (1965) 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100], superseded by statute on other grounds as stated in People v. Rubalcava, supra, 23 Cal.4th 322.)
(3) The trial court reasonably concluded that the bicycle footrest, when grasped inside a person's fist, could increase the force of impact from a blow *811 and result in increased injury to the victim. Additionally, as the trial court also noted, the footrest, when used as a weapon, would "help support the hand or fist." Based on the language of the statute itself, the characteristics of the footrest, and past common law interpretations of the statute's meaning, there was substantial evidence to support the trial court's determination that the footrest fell within the statutory definition of "metal knuckles." We now turn to appellant's contention that there was insufficient evidence of the requisite mens rea.

B. Appellant's Intent

(4) It is well established that possession of a weapon in violation of section 12020, subdivision (a)(1), is not a strict liability crime. (People v. Rubalcava, supra, 23 Cal.4th at pp. 331-332; People v. King (2006) 38 Cal.4th 617, 625 [42 Cal.Rptr.3d 743, 133 P.3d 636].) In a trial for weapon possession, the prosecution must prove that the item possessed had the necessary characteristic to fall within the statutory description and that the defendant knew of the characteristic. (People v. King, supra, 38 Cal.4th at p. 627.) If the object is not a weapon per se, but an instrument with ordinary innocent uses, the prosecution must also prove that the object was possessed as a weapon. (People v. Fannin (2001) 91 Cal.App.4th 1399, 1404 [111 Cal.Rptr.2d 496].)
When the item possessed is an object of ordinary, innocent usage, a court should consider "the attendant circumstances" of possession, "including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts" in determining whether "the possessor would use the object for a dangerous, not harmless, purpose." (People v. Grubb, supra, 63 Cal.2d at pp. 620-621.) However, proof of the defendant's specific intent to use the object as a weapon is not required. (People v. Rubalcava, supra, 23 Cal.4th at pp. 330-331; People v. Gaitan (2001) 92 Cal.App.4th 540, 547 [111 Cal.Rptr.2d 885].) The People need not prove that the defendant planned to use the object as a weapon against a specific victim at a specific time and place. Proof of the defendant's general intent is sufficient. (People v. Rubalcava, supra, 23 Cal.4th at pp. 330-331; People v. Gaitan, supra, 92 Cal.App.4th at p. 547.) Thus, the People need only show that the defendant knew the object could be used as a weapon and was carrying it with the intent of using it as such, should the need or opportunity arise.
The defendant is permitted to demonstrate that he possessed the object for innocent, rather than violent, purposes. (People v. King, supra, 38 Cal.4th at p. 624.) However, the burden is on the defendant to establish "innocent usage." (People v. Grubb, supra, 63 Cal.2d at p. 621.) "Once defendant has *812 put in issue his planned and intended use of the instrument the People may introduce evidence tending to negate the possibility of a peaceful use by showing, for instance, the utilization of the instrument as a weapon in the past." (Id. at pp. 621-622, fn. 9.)
Here, there was sufficient evidence to support the juvenile court's finding that appellant possessed the bicycle footrest as a weapon in violation of section 12020. Officer Appleby testified that this type of object is one commonly used as metal knuckles, despite its nonviolent intended purpose. Officer Appleby also testified that he could not find a way to secure the footrest to the bicycle appellant was riding, although it appeared to comprise a fairly basic system. Additionally, Officer Appleby did not see a footrest already affixed to appellant's bicycle. The juvenile court could have reasonably inferred that, even if the footrest appellant was carrying could be attached to his bicycle, it could not be used as intended absent a second footrest attached to the opposite side of the wheel hub.
Lastly, Officer Appleby testified that he recovered the footrest from appellant's back pocket. The juvenile court concluded based on the size of the footrest itself that it was not the kind of item a person would casually carry in his pocket. If the juvenile court credited Officer Appleby's testimony, it could reasonably have concluded that appellant was carrying the bicycle footrest as a weapon and not with the general intent of using it for its intended purpose. We therefore affirm the judgment of the juvenile court.

III. Declaration of "Wobbler" Offense As a Felony or Misdemeanor

Appellant's final contention concerns the juvenile court's declaration of his weapon possession offense as a felony or misdemeanor. At the close of trial proceedings, the court clerk asked, "Was this a felony?" and the court responded, "Yes, both felonies." The court later stated, "They're both felonies. The maximum sentence is three years, eight months unless I stand corrected," and subsequently remarked, "I thought both were three-year felonies." Furthermore, the minute order of the September 17, 2007 dispositional hearing bears a checkmark indicating that, on both petitions, the "[o]ffense is declared to be a felony." Appellant argues that the court did not evidence awareness that the violation was a so-called "wobbler" offense or acknowledge its discretion to declare the offense a misdemeanor, rather than a felony. He further contends that the juvenile court failed to formally declare whether the offense was a felony or misdemeanor, as required by statute.
(5) A violation of section 12020 is punishable by confinement in the county jail or in the state prison. Thus, in the case of an adult offender, such a violation is classifiable as either a felony or misdemeanor. (§ 17.) Under *813 Welfare and Institutions Code section 702, "[i]f [a] minor [defendant] is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."
(6) Precedent cases have not directly addressed whether an express declaration satisfies Welfare and Institutions Code section 702 where there is no additional evidence that the juvenile court was aware of its discretion to declare an offense a misdemeanor. In all of the cases of which this court is aware, reversible error was found only where an express declaration was itself lacking. Appellant relies on In re Manzy W. (1997) 14 Cal.4th 1199 [60 Cal.Rptr.2d 889, 930 P.2d 1255] for the proposition that the record must demonstrate the exercise of discretion. However, neither Manzy W. nor any other case has held that a formal declaration alone cannot demonstrate the exercise of discretion. As the Supreme Court noted in Manzy W., the purpose of requiring a formal declaration is to "ensur[e] that the juvenile court is aware of, and actually exercises, its discretion under Welfare and Institutions Code section 702." (Id. at p. 1207.) Thus, where a juvenile court makes an express declaration, the declaration itself is evidence that the court was aware of and exercised its discretion.
Appellant argues that Manzy W. rejected the notion that a juvenile court's exercise of discretion can be presumed under Evidence Code section 665.[4]Manzy W. is distinguishable from the instant case, however. In Manzy W., the trial court failed to formally declare whether the offense in question was a misdemeanor or felony. (In re Manzy W., supra, 14 Cal.4th at pp. 1203-1204.) Accordingly, the Supreme Court held that, where "the juvenile court violated its clearly stated duty under Welfare and Institutions Code section 702 ...," and there was no other evidence that it had considered whether the offense was a misdemeanor or felony, a presumption that the court had exercised its discretion was unwarranted. (Id. at p. 1209.) Manzy W. did not address whether such a presumption would be inappropriate where the juvenile court did not violate its duty under Welfare and Institutions Code section 702. We thus conclude that, where a juvenile court expressly declares an offense to be a felony or misdemeanor, it is not inappropriate to presume that the declaration itself demonstrates an awareness and exercise of discretion.
Despite appellant's contentions, there is little question that the juvenile court in this case declared appellant's weapon possession offense to be a felony. When the court clerk asked, "Was this a felony?" the court responded, "Yes, both felonies." The court repeated this declaration once more during the *814 proceedings and the minute order was subsequently marked to reflect the court's decision. Appellant's contention that the juvenile court did not declare the offense a misdemeanor or felony is therefore without merit. We hold that the oral statements made by the juvenile court sufficiently demonstrate that the court was aware of and exercised its discretion, thus satisfying the requirements of Welfare and Institutions Code section 702.

DISPOSITION
The juvenile court's orders are affirmed.
Turner, P. J., and Kriegler, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Throughout trial testimony, the item was referred to alternately as a "footrest," "foot stool," "tooth rest," and "tooth stool." For the sake of consistency, we will heretofore refer to it as a "footrest."
[3] Section 12020, subdivision (a)(1) now reads in its entirety: "Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison: [¶] (1) Manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any cane gun or wallet gun, any undetectable firearm, any firearm which is not immediately recognizable as a firearm, any camouflaging firearm container, any ammunition which contains or consists of any fléchette dart, any bullet containing or carrying an explosive agent, any ballistic knife, any multiburst trigger activator, any nunchaku, any short-barreled shotgun, any shortbarreled rifle, any metal knuckles, any belt buckle knife, any leaded cane, any zip gun, any shuriken, any unconventional pistol, any lipstick case knife, any cane sword, any shobi-zue, any air gauge knife, any writing pen knife, any metal military practice handgrenade or metal replica handgrenade, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag." (§ 12020, subd. (a)(1).)
[4] As noted by appellant, the official reporter cites Evidence Code section 665, though it appears the court was actually referring to section 664.