Opinion
WATAI, J.
Appellant was convicted of violating Penal Code[1] section 12020, subdivision (a) (possessing an instrument or weapon of the kind commonly known as a billy). On appeal, appellant contends as follows:
1. The trial court erroneously found that section 12020, subdivision (a) outlawed the possession of a baton.
2. Section 12020, subdivision (a) is unconstitutionally vague.
We affirm the conviction.
The complaint was filed against appellant on October 18, 1994. On that date, appellant made a section 991[2] motion to dismiss, arguing in part that “there is no weapon included in [section 12020, subdivision (a)] which matches the description of the weapon involved here. In the complaint itself it refers to the weapon as a ‘baton.’ But I don’t find where in 12020 that there is a weapon referred to as a ‘baton.’ I believe that counsel is going to argue that is encompassed within the part of the code that prohibits possession of a billy club, but I don’t think that this is what the code is referring to when it says ‘billy club.’ ” The trial court denied the section 991 motion.
On October 20, 1994, both parties submitted the matter to the court on the police report. The court found appellant guilty and placed him on summary probation for 24 months on various terms and conditions. Appellant filed a timely notice of appeal on November 9, 1994.
The version of section 12020, subdivision (a) which was in effect at the time of appellant’s alleged violation provided in relevant part: “(a) Any person in this state who . . . possesses any cane gun or wallet gun, any undetectable firearm, any firearm which is not immediately recognizable as a firearm, any camouflaging firearm container, any ammunition which contains or consists of any fléchette dart, any bullet containing or carrying an *Supp. 4 explosive agent, any ballistic knife, any multiburst trigger activator, any nunchaku, any short-barreled shotgun, any short-barreled rifle, any metal knuckles, any belt buckle knife, any leaded cane, any zip gun, any shuriken, any unconventional pistol, any lipstick case knife, any cane sword, any shobi-zue, any air gauge knife, any writing pen knife, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag, or who carries concealed upon his or her person any explosive substance, other than fixed ammunition or who carries concealed upon his or her person any dirk or dagger shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison. . . .”
Clearly, this statute does not list a “baton” as one of the prohibited items. Therefore, this court must determine whether the item in question is an “instrument or weapon of the kind commonly known as a . . . billy." (§ 12020, subd. (a), italics added).
In People v. Grubb (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100], the California Supreme Court determined that section 12020, subdivision (a) was not unconstitutionally vague, and that section 12020 outlaws other instruments besides those specifically enumerated: “Defendant complains that ... the statute [is unconstitutionally vague] because a man of common intelligence cannot know if he violates its prohibition in view of its sweeping coverage. The contention runs that the term ‘billy’ encompasses such ordinary objects as an orthodox baseball bat, a table leg, or a piece of lumber; even though these objects find their most common use in a peaceful and traditionally acceptable way, all of them could be used as weapons of physical violence. [*]D We must construe the enactment, however, in the light of the legislative design and purpose. [Citations.] The Legislature obviously sought to condemn weapons common to the criminal’s arsenal; it meant as well ‘to outlaw instruments which are ordinarily used for criminal and unlawful purposes.’ [Citations.] ... [*10 The terms of the statute gain content and definition by reference to this purpose. ... ‘A statute will be upheld if its terms may be made reasonably certain by reference to . . . its legislative history or purpose.’ The Legislature here sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose. [Citation.] [^Q Thus we hold that the statute embraces instruments other than those specially created or manufactured for criminal purposes; it specifically includes those objects ‘of the kind commonly known as a billy.’ [Citation.] The concomitant circumstances may *Supp. 5 well proclaim the danger of even the innocent-appearing utensil. The Legislature thus decrees as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger. Accordingly the statute would encompass the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a ‘tough’ neighborhood to the scene of a riot. On the other hand the section would not penalize the Little Leaguer at bat in a baseball game. [*]] Applying this test to the instant case, we find the possession of the altered baseball bat, taped at the smaller end, heavier at the unbroken end, carried about in the car, obviously usable as a ‘billy,’ clearly not transported for the purpose of playing baseball, violates the statute.” (63 Cal.2d at pp. 619-621, fns. omitted.)
In People v. Canales (1936) 12 Cal.App.2d 215 [55 P.2d 289], the defendant’s conviction of possessing “a black jack or billy” was upheld based on his possession of “two weapons . . . , one a club IAVa inches long, thicker at one end than the other, with nails driven into the larger end and covered with tape. The other was a straight, smooth piece of wood about the thickness of a pick handle, eighteen inches long.” (Id. at p. 217.) The court stated: “The definition [(i.e., instruments ‘of the kind commonly known as a . . . billy’)] is purposely broad, for . . . the legislature did not prohibit the possession of a blackjack as such or a billy as such as it might have done, but instead and very likely with appreciation of the difficulties of nomenclature, forbade ownership of any weapon of that class', the purpose being to outlaw instruments which are ordinarily used for criminal and unlawful purposes.” (Ibid.)
In the present case, the court noted that the item in question was described as a collapsible baton, and that it was “used for the same purpose [as a billy] which is a striking motion.” The police report shows that appellant told the arresting officer the object was a truck antenna. However, when the arresting officer saw the object he “immediately recognized it as a weapon commonly known as a [collapsible] baton. The weapon, when extended by a flick of the wrist, is extended and used as a club, [f] I have seen this weapon on several occasions and it is used by police and martial arts as an offensive weapon used to strike.” Under the above authorities, possession of such an item is proscribed by section 12020, subdivision (a).
We note that Webster’s New World Dictionary defines a “billy” as “a club or heavy stick; truncheon, esp. one carried by a policeman.” (Webster’s New World Dict. (2d college ed. 1986) p. 141.) A “truncheon” is defined as “1. a short, thick cudgel; club 2. any staff or baton of authority 3. ... a policeman’s stick or billy . . . .” (Id. at p. 1527.) The item which appellant was carrying fits into these definitions.
*Supp. 6 In addition, “the time, place, destination of [appellant], the alteration of the object from standard form, and other relevant facts indicated that [appellant] would use the object for a dangerous, not harmless, purpose.” (People v. Grubb, supra, 63 Cal.2d at pp. 620-621.) At the section 991 hearing the court summarized the facts surrounding appellant’s arrest.[3] The arresting officers responded to a call regarding an apparent burglary. The officers arrived at the location to find appellant “either exiting the building or in the vicinity thereof. He had a cut on his hand and they detained him at that point in time believing he might be a suspect. And it appears for purposes of the report, although it’s not articulated, the time, being a Sunday, the building or buildings are not open. They did a pat-down search for weapons and discovered what they’ve described as a collapsible baton.” Thus, even assuming arguendo that the instrument found on appellant’s person was not initially meant to be a weapon, the attendant circumstances indicate that the item was to be used as a weapon at the time of arrest.
Language from other sections in the Dangerous Weapon’ Control Law,[4] of which section 12020 is a part, also convinces us that possession of a baton is proscribed by section 12020, subdivision (a). Section 12002, subdivision (a) provides: “(a) Nothing in this chapter prohibits police officers, special police officers, peace officers, or law enforcement officers from carrying any wooden club, baton, or any equipment authorized for the enforcement of law or ordinance in any city or county.” (Italics added.) In addition, section 12020, subdivision (b)(14) provides that subdivision (a) does not apply to “[t]he manufacture for, sale to, exposing or keeping for sale to, importation of, or lending of wooden clubs or batons to special police officers or uniformed security guards authorized to- carry any wooden club or baton ... by entities that are in the business of selling wooden batons or clubs to special police officers and uniformed security guards when engaging in transactions with those persons.” (Italics added.)
Finally, 65 Ops.Cal.Atty.Gen. 120, 121 (1982) states: “Although section 12020(a) does not prohibit the possession of a policeman’s baton as such, it is an ‘instrument or weapon of the kind’ or class commonly known as a billy club or blackjack and falls within the proscription.”
We are persuaded by the foregoing that the trial court did not err in finding that appellant violated section 12020, subdivision (a).
*Supp. 7 The judgment is affirmed.
Roberson, P. J., and Mallano, J., concurred.

All further statutory references will be to the Penal Code unless otherwise indicated.

Section 991 provides in relevant part: “(a) If the defendant is in custody at the time he appears before the magistrate for arraignment and, if the public offense is a misdemeanor to which the defendant has pleaded not guilty, the magistrate, on motion of counsel for the defendant or the defendant, shall determine whether there is probably cause to believe that a public offense has been committed and that the defendant is guilty thereof.”

The section 991 hearing was based on the police report.

Section 12000 et seq.