[Crim. No. 12484. Second Dist., Div. Four. Feb. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MARVIN
AUSTIN DEANE, Defendant and Appellant.

Marvin Austin Deane, in pro. per., and William A. Crim, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with possessing metal knuckles, in violation of section 12020 of the Penal Code.[1] After a trial by jury, he was found guilty as charged; a motion for new trial was made and denied; he was sentenced to the county jail for six months, which sentence was suspended and he was placed on probation. He has appealed from "the judgment"[2] and from the order denying his motion for a new trial. We dismiss the attempted appeal from the nonappealable order denying the new trial and reverse the judgment (order granting probation).

On February 24, 1966, the Lynwood Police Department received a report of a burglary at an address on Peach Street in that city. On investigation Officer Walker was told by Miss Young that a man, driving a light colored Ford, had been following her and had parked in front of her apartment building on several occasions. She reported that, returning to her apartment about 11 p.m., after a brief visit to the manager's office, she had discovered her door open and her purse missing. About midnight on February 26, 1966, she reported to Officer Walker that the same man had again parked in front of her apartment, that she and a male friend had accosted him but that, after a brief conversation, he had driven off. On that occasion she had secured the license number of his car, which she gave to the officer. At about 2 a.m. the next morning the same officer, then driving a patrol car, saw a light colored Ford carrying the license number given to him by Miss Young. He stopped the car, defendant alighted and, after a conversation, defendant was arrested on suspicion of burglary and robbery.[3] In plain sight on the seat of the car

[1] "Any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, sawed-off shotgun, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition or who carries concealed upon his person any dirk or dagger, is guilty of a felony, and upon conviction shall be punishable by imprisonment in the county jail not exceeding one year or in a state prison for not less than one year nor more than five years."

[2] We treat the notice as being the permissible appeal from the order granting probation. (Pen. Code, § 1237.)

[3] Nothing in the record suggests any foundation for a robbery charge.

was a loaded revolver;[4] search of the car disclosed the object which forms the basis for the present prosecution.

## I

At the trial, objection was made to the introduction of the object in question, on the ground that it was the product of an illegal search. There was testimony that the search followed defendant's arrest and also followed the giving of the required *Dorado* warnings and that defendant, after his arrest and warning, had consented to the search. We need not determine whether or not the search was pursuant to a voluntary consent, since we hold that the trial court properly ruled that the arrest was lawful, thus sustaining the contemporaneous search of the car even absent defendant's consent. Defendant points to inconsistencies in the officers' testimony as to when the arrest occurred and when the warnings were given, but those matters went only to the issue of credibility and the determination of the trial court adverse to defendant binds us here. While the showing of probable cause is not strong, still we think that the trial court correctly decided that it existed.[5]

## II

On appeal, defendant argues that section 12020 is too vague to meet constitutional standards. That contention has heretofore been made and rejected in *People* v. *Grubb* (1965) 63 Cal.2d 614, 619-622 [47 Cal.Rptr. 772, 408 P.2d 100], and in *People* v. *Mulherin* (1934) 140 Cal.App. 212 [35 P.2d 174].

## III

However, while the statute itself is not too vague to satisfy constitutional standards, we conclude that a jury is entitled to some guidance as to the meaning of the statutory terms. As we shall point out, no such guidance was given in the case at bench.

The object herein involved is a self-designed object consist-

---

[4]It is admitted that, since the revolver was in plain sight, its possession was legal. Its presence has significance only as part of the over-all probable cause for the arrest and because of the contradictory testimony concerning the alleged ''metal knuckles'' hereinafter discussed.

[5]The officers had information from the victim positively identifying the car driven by the suspect; and defendant, when told that he was suspected of a ''burglary on Peach Street,'' had responded by saying that he had talked to the woman's ''husband or boy friend'' and that it was ''all straightened out.'' In this situation, we cannot say that there was no probable cause to arrest.

ing of a metal bar, 3¼ inches long and ¾'' in diameter, to which has been welded a metal strap, 1 inch in width and about 6½ inches long. The strap has been bent, with each end welded to the ends of the metal bar, so as to form an oblong object with a space between the bar and the strap about 1 inch in width. The outside of the strap has been roughened with a file or some similar device.

Defendant testified that it was constructed, at his order, for the purpose of welding it to his tool box as a handle and that the strap surface had been roughened in order to permit a clean weld. He was supported by a witness who testified that he had cut for defendant several lengths of metal bar of the type used in the object before us and by a witness who testified that, after defendant's arrest in this case, he had assisted defendant in manufacturing a similar object and welding it to a tool box. The box, with such a handle, was introduced in evidence and is before us.

Clearly, as the Attorney General points out, the box and its handle are open to the objection that they were manufactured after the event and that this may have been done in order to support the defense theory at the trial. Although defendant's conversation with police officers at the police station immediately after his arrest was not introduced by the prosecution, he testified, without contradiction, that he had then told the officers the same story as to the purpose and function of the metal object herein involved as he told at the trial. If his theory was invented after the arrest it was, at least, invented quite promptly. In any event, the importance of the box with its handle lies in the fact that they do prove that the object found in defendant's possession, and made the basis of the present charge, did have a possible legitimate use. To that extent, at least, they corroborate defendant's contention and raise the issue of the purpose and intended use of the object found.

It will be noted that the statute contains no definition of the term ''metal knuckles'' (nor of any of the other articles, the possession of which it proscribes). Dictionary definitions are not particularly helpful. The Third Edition of Webster's International Dictionary defines the more commonly used term ''brass knuckles,'' as follows: ''A set of four metal finger rings or guards attached to a transverse piece and worn over the front of the doubled fist for use as a weapon.'' Other dictionary definitions are cast in substantially the same form.

We set out illustrative definitions in the margin.[6] It will be noted that, except possibly the next to the last one quoted, none of them describe the object herein involved, which has no rings or finger holes, which, while it would "enclose" the knuckles, cannot be said to "fit" over the knuckles, and which, because of the wide area between the bar and plate, would be of doubtful value as a "protection" to the hand of the user, however damaging it might be to the assailee.

Judicial construction is no more helpful. In *People* v. *Ferguson* (1933) 129 Cal.App. 300 [18 P.2d 741], the character of the object was admitted, the defense being that defendant possessed it only as a curio and without any intent to use it as a weapon—a defense which the court rejected. In *People* v. *Quinones* (1934) 140 Cal.App. 609 [35 P.2d 638], the major issue was the contention that the instrument therein involved (described as consisting "of alternate strips of sheet lead and gum tape, making a set of knuckles somewhat in the shape of a bracelet and of a size to fit over four finger knuckles") was not within the statute because not made entirely of metal. That contention the court rejected. In its discussion, it quoted (at page 611) from the Century Dictionary, saying: "One of the common English meanings of 'knuckle' is 'a piece of metal, usually brass worn over the knuckles in order to protect them in striking a blow and to make the blow more effective.' (Cent. Dict.)" The court then pointed out that there was, in that case, expert testimony that the object therein in question was "a pair of metal knuckles." We advert to the latter statement at a later place in this opinion.

[6]Ballentine's Law Dictionary (2d ed. 1948): "A weapon used for offense and defense, worn upon the hand to strike with as if striking with the fist. When first known and used, the weapon was commonly made of brass, but it is now made of steel, platinum or other heavy metal, as well as brass, but it retains the name of brass knuckles, no matter of what material it is made."

The Britannica World Language Dictionary (1958 ed.): "A device of metal, fitting over the knuckles, used as a protection for them in striking and to add force to the blow."

Webster's New Twentieth Century Dictionary (2d ed.): "Linked metal rings or a metal bar with holes for the fingers, worn for rough fighting."

The Random House Dictionary of the English Language (1966): "A band of metal with four finger holes that fits over the root knuckles of the hand, used for increasing the effect of a blow from the fist."

Black's Law Dictionary (4th ed. 1951): "A weapon worn on the hand for the purposes ⸜f offense or defense, so made that in hitting with the fist considerable damage is inflicted."

Thorndike-Barnhart Comprehensive Desk Dictionary (1952): "A protective metal device for the knuckles, used in fighting."

Out-of-state cases, so far as the research of counsel and our own research disclose, add nothing to the above scanty authority. Of those found, two[7] decide only that a statute referring to "brass" knuckles was violated by possession of a weapon made of some other metal; two[8] hold only that it was not a demurrable defect to use the slang term "knucks" instead of the statutory word "knuckles."

We can find in the record only one piece of evidence that attempts to identify the object involved as being within the statutory prohibition. In describing the search of the car that led to the finding of the article, Officer Walker testified: "I observed a pair of vinyl gloves sticking out from the visor on the top. I reached up to remove the vinyl gloves and I got— the metal knuckle attachment came down with it." We recognize that, in *People* v. *Quinones, supra* (1934) 140 Cal.App. 609, the court held that the object therein involved was sufficiently shown to meet the statutory prohibition by the testimony of a police inspector "of many years' experience," that the object he had found was "a pair of metal knuckles." But in so holding, the court expressly relied on the inspector's rank and experience to give him the status of an expert. In the case at bench, we know nothing of Officer Walker's background or experience—for all that appears in this record he may have been the department's newest recruit.[9]

We note one other item. The offer of evidence was of the object itself, and it was the object that was received in evidence. ▮▮▮ But the exhibit before us has attached to it, by a piece of string, a form of the Lynwood Police Department, entitled "Recovered Property," to which are stapled forms used by the clerks of the municipal and superior courts, showing the receipt of the object as "Exhibit 1," in each court. The physical condition of the entire exhibit is such that it is apparent that not only the metal object but also the three pieces of paper so stapled together had gone to the jury. The "Recovered Property" form, in handwriting, identifies the object attached thereto as "one home made brass knuckle." When, how, or by whom, that classification was made we do not know. Clearly it adds nothing to the People's proof and

[7]*Harris* v. *State* (1887) 22 Tex.App. 677 [3 S.W. 477]; *Patterson* v. *State* (1879) 71 Tenn. (3 Lea) 575.

[8]*Mills* v. *State* (1896) 36 Tex.Crim.Rep. 71 [35 S.W. 370]; *Lovelady* v. *State* (1917) 15 Ala.App. 615 [74 So. 734].

[9]Our knowledge of Officer Walker's background is limited to his testimony that he was a "Police Officer, Patrol Division, City of Lynwood," and that he had been such two days before the arrest, when he interviewed Miss Young.

may well have been prejudicial to defendant in the minds of the jury.

As the Attorney General points out, the cases, both in California and elsewhere, have given to statutes such as section 12020 a liberal construction. As we read them, the cases distinguish between objects—such as the metal knuckles involved in *People* v. *Quinones, supra* (1934) 140 Cal.App. 609, and the alleged "slung shot" involved in *People* v. *Mulherin, supra* (1934) 140 Cal.App. 212—which clearly fall within dictionary definitions and which are so constructed as to have no possible legitimate use, and objects—such as the alleged "billy" involved in *People* v. *Grubb, supra* (1965) 63 Cal.2d 614—which might be used either as a deadly weapon or as a legitimate tool or for legitimate sport. ▆▆▆ As to cases involving objects of the latter and indeterminate type, the Supreme Court said in *Grubb,* at page 620: "The Legislature here sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless purpose."

In cases where the object clearly is usable only as an illegal weapon, it may be sufficient to instruct the jury by giving them (in addition to an instruction such as was given here) only the dictionary definition. ▆▆▆ And expert testimony that the object in evidence falls within such a definition meets any requirement of evidentiary support.

▆▆▆ But where the object may have a legitimate and lawful use, we conclude that *Grubb* requires (either with or without expert testimony) that there be evidence tending to show that, at the time and place of the alleged illegal possession, the possessor contemplated the unlawful and not the lawful use. ▆▆▆ And, in such a case, the jury must be given, in addition to the instructions above discussed, an instruction covering the rule which the Supreme Court expressed in the language above quoted from the *Grubb* opinion.

In the case at bench, there was some evidence bearing on the purpose for which the object was carried in the car. The officers testified that they had first noticed a loaded pistol lying on the car seat and that, when asked as to the purpose

of that article, defendant had replied that it was "for protection," with an explanation of fear of attack by certain ex-convicts. The officers' testimony was that, when the alleged metal knuckle was found, they had asked defendant as to its purpose and that he had replied that it was "for protection also." This defendant denied, claiming that the "for protection," remark had been made only in connection with the pistol and that he had, as to the alleged metal knuckle, given the same explanation as he gave later to the officers at the police station and at the trial. The issue as to purpose was, thus, squarely joined.

But the jury was never told that this conflicting evidence was important, nor was it given any other guide to determine whether the object was a "metal knuckle" and not a box handle. The sole instruction at all pertinent here[10] was as follows: "The law just stated, which forbids the possession of certain types of weapons, although naming several such specifically, also includes all other weapons of the same kind, and it leaves to you, the jury, to determine from the evidence whether the defendant possessed any instrument or object so named in the law or of the same kind as those so named, as charged in the information."

Had there been legitimate evidence, from a proven expert, that the object was a "metal knuckle," and had no other possible use, and had the trial court instructed the jury in terms similar to the language above quoted from *People* v. *Grubb,* so that the jury's attention was properly directed to the elements which distinguish an illegal from a legal object, an implied finding that the object herein involved was possessed for a dangerous purpose and not for use as a box handle would have had support. But no such instruction was given. We cannot say, on this record, that the jury returned its verdict because it believed that defendant had admitted an improper purpose for the object, or because it had relied on the non-expert opinion of Officer Walker, or on the anonymous classification on the property slip, or because it had evolved some definition of its own. A verdict resting only on such speculations may not stand.

The attempted appeal from the order denying a new trial is dismissed; the judgment (order granting probation) is reversed.

Files, P. J., and Jefferson, J., concurred.

---

[10]The jury was elaborately instructed on the meaning of the term "possession"—a matter never in issue.