48 Cal.4th 23 (2010)
104 Cal. Rptr. 3d 471
223 P.3d 603
In re David V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
DAVID V., Defendant and Appellant.
No. S167716.
Supreme Court of California.
February 8, 2010.
*24 John A. Colucci, under appointment by the Supreme Court, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters, James William Bilderback II, Lawrence M. Daniels and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
CORRIGAN, J.
The juvenile court sustained a petition charging David V. with possession of metal knuckles. On appeal, David argued that the bicycle footrest found in his pocket did not come within the statutory definition of "metal knuckles," and even if it did there was no proof he possessed it with criminal intent. The Court of Appeal rejected these arguments, and affirmed. We reverse. A cylindrical object like the footrest in this case is not a device *25 "worn . . . in or on the hand," under the definition of "metal knuckles" provided in Penal Code section 12020, subdivision (c)(7).

I. BACKGROUND
Around 1:30 on the afternoon of August 21, 2007, a Los Angeles police officer stopped 14-year-old David for riding his bicycle without a helmet. During a consensual search the officer recovered a bicycle footrest from David's pants pocket. The officer described this item as a hollow cylinder about three and one-half inches long.[1] In his experience with the gang detail, he had learned that such footrests were commonly used as brass knuckles, held in a closed fist and "used as an impact punching device." The officer was unable to find a place where the footrest would attach to David's bicycle, and no other footrest was installed.
A petition was filed under Welfare and Institutions Code section 602 charging David with possession of metal knuckles, a violation of Penal Code section 12020, subdivision (a)(1).[2] After a hearing where the arresting officer testified and the footrest was received in evidence, the court put the matter over so counsel could submit authority on whether the device met the statutory definition of "metal knuckles." At a subsequent hearing, the court decided the footrest amounted to a metal device "worn for purposes of offense or defense in or on the hand and which either protects the wearer's hand while striking a blow or increases the force of impact from the blow or injury to the individual receiving the blow." (§ 12020, subd. (c)(7).) The court also determined that David had carried the device as a weapon. It noted that the footrest did not fit on his bicycle, was something used to brace the fist for purposes of punching, and was so large that he would not casually have carried it in his pocket.
In the Court of Appeal, David contended that because the statute requires metal knuckles to be worn, it applies only to weapons that can be affixed to the hand. The court disagreed, reasoning that the Legislature would not have used the term "worn . . . in or on the hand" if it did not mean to include objects that could simply be held in the hand and wielded for "purposes of offense or defense." (§ 12020, subd. (c)(7), italics added.) The court reasoned that recent amendments to section 12020 indicated a legislative intent to broaden its scope.
The Court of Appeal acknowledged that the prosecution was required to prove David possessed the footrest as a weapon, knowing it could be so used *26 and willing to so use it should an occasion arise. (See People v. Grubb (1965) 63 Cal.2d 614, 621 [47 Cal.Rptr. 772, 408 P.2d 100]; People v. Fannin (2001) 91 Cal.App.4th 1399, 1404 [111 Cal.Rptr.2d 496].) The court found sufficient evidence of that mental state in the juvenile court's finding regarding the size of the footrest, and in the officer's testimony that bicycle footrests were commonly used as metal knuckles, that he was unable to find a place for this footrest on David's bicycle, and that no second footrest was in place on the bicycle.
We granted David's petition for review. David argues that the evidence was insufficient both to show that the footrest qualified as "metal knuckles," and to establish the requisite mental state. Because we agree with his first argument, we do not reach the second.

II. DISCUSSION
(1) Before 1985, section 12020 prohibited possession of a "weapon of the kind commonly known as . . . metal knuckles," without defining the term. (Stats. 1953, ch. 36, § 1, p. 653; see People v. King (2006) 38 Cal.4th 617, 623-624 [42 Cal.Rptr.3d 743, 133 P.3d 636].) In People v. Deane (1968) 259 Cal.App.2d 82, 86-87 [66 Cal.Rptr. 177], the court referred to a number of dictionary definitions of metal or brass knuckles.[3] Typical metal knuckles, manufactured as weapons, are deemed inherently dangerous so that mere possession is illegal regardless of the defendant's purposes. (People v. Ferguson (1933) 129 Cal.App. 300, 304 [18 P.2d 741]; see People v. Grubb, supra, 63 Cal.2d at p. 621, fn. 9; People v. Deane, supra, 259 Cal.App.2d at p. 89.)
As the Deane case made clear, however, more ambiguous objects may qualify as metal knuckles. Deane was found with a three-and-one-quarter-inch metal bar welded at both ends to a metal strap. He claimed the device *27 had been made for him as a toolbox handle. (People v. Deane, supra, 259 Cal.App.2d at pp. 85-86.) The court held that because this legitimate use was possible, the jury had to be instructed on "the elements which distinguish an illegal from a legal object," in order to "determine whether the object was a `metal knuckle' and not a box handle." (Id. at p. 90, citing People v. Grubb, supra, 63 Cal.2d at p. 614.)
In 1984, the Legislature added the definition now found in section 12020, subdivision (c)(7): "As used in this section, `metal knuckles' means any device or instrument made wholly or partially of metal which is worn for purposes of offense or defense in or on the hand and which either protects the wearer's hand while striking a blow or increases the force of impact from the blow or injury to the individual receiving the blow. The metal contained in the device may help support the hand or fist, provide a shield to protect it, or consist of projections or studs which would contact the individual receiving a blow." (Stats. 1984, ch. 1562, § 1.1, p. 5499.) In 1988, the Legislature amended section 12020, subdivision (a) to bar possession of "any metal knuckles" instead of implements "commonly known" by that term, clarifying that the statutory definition is controlling. (Stats. 1988, ch. 1269, § 2.7, p. 4229.)
(2) To decide whether the bicycle footrest David carried in his pocket qualifies as "metal knuckles" under section 12020, subdivision (c)(7), we turn first to the words of the statute, giving them their ordinary meaning. (People v. King, supra, 38 Cal.4th at p. 622; People v. Rubalcava (2000) 23 Cal.4th 322, 328 [96 Cal.Rptr.2d 735, 1 P.3d 52].) There is force in David's argument that the ordinary meaning of "worn . . . in or on the hand" does not include an object that is not somehow attached to the hand, but merely grasped in it. The distinction between "wearing" an object and holding it is a familiar one in the weapons context. A gun or knife that is "worn" is readily understood to be carried in a holster or sheath. If it were gripped in the hand, a different verb would be expected, such as "hold" or "carry." Metal knuckles of the usual sort, which are fitted to the hand, generally with holes for the fingers, are "worn . . . in or on the hand." But a metal cylinder like the footrest in this case is not, in ordinary usage, said to be "worn" when held in the hand.
The Attorney General relies on an Oxford English Dictionary definition of "wear" as "[t]o bear or carry (arms, also a stick or cane)." (20 Oxford English Dict. (2d ed. 1989) p. 47.) However, we are satisfied that modern American usage does not include this connotation, insofar as it extends to implements carried in the hand.[4] Also unpersuasive is the Attorney General's citation to *28 Web sites of purse manufacturers where clutch purses and the like are said to be "worn in the hand." Even if this is common terminology in the fashion industry, it is unlikely that the Legislature would have considered it in connection with a weapons statute.
Nevertheless, there is also some force in the Court of Appeal's observation that the Legislature specifically included devices worn "in" the hand, perhaps indicating an intent to include objects held in a closed fist. That interpretation is consistent with other statutory language making it clear that metal knuckles may simply provide support for the fist, not necessarily a striking surface. The device "either protects the wearer's hand while striking a blow or increases the force of impact from the blow . . . . The metal contained in the device may help support the hand or fist, provide a shield to protect it, or consist of projections or studs . . . ." (§ 12020, subd. (c)(7), italics added.) Moreover, we have long recognized that section 12020 was enacted not only "to outlaw the classic instruments of violence and their homemade equivalents," but also "to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose." (People v. Grubb, supra, 63 Cal.2d at pp. 620-621.)
To resolve the ambiguity of the term "worn . . . in or on the hand" in section 12020, subdivision (c)(7), and determine whether the Legislature meant to extend the definition of "metal knuckles" to include such innocently useful objects as bicycle footrests, we consult the history of the 1984 legislation enacting the statutory definition. (See People v. King, supra, 38 Cal.4th at p. 622; People v. Rubalcava, supra, 23 Cal.4th at p. 328.) A Senate Judiciary Committee analysis includes an illuminating set of comments on the newly proposed definition:

"(a) Emergence of a new type of metal knuckles
"Recently a number of violent crimes have been committed in which a heretofore unknown weapon has been used. This weapon consists of a piece of leather which can be attached to either the back or the palm of the hand, along with a strap to secure the device to the wrist and leather loops for the assailant's fingers. The apparatus is covered with metal cone-shaped spikes which are about three-quarters of an inch long. Assailants can use these `metal knuckles' with a closed fist or an open hand.
*29 "In either case contact with this weapon will generally cause the victim considerable injury.

"(b) New definition of `metal knuckles'
"This bill defines the term `metal knuckles' contained in existing law and includes this new weapon under that definition.
"The bill would prohibit any device made wholly or partially of metal, and worn in or on the hand, which protects the wearer's hand when striking a blow or increases the force of that blow. The metal contained in the device may help support or shield the hand or fist, as in the case of traditional brass knuckles, or consist of studs, as in the new weapon.

"(c) Minor modification to existing law
"The failure of the present statute to define `metal knuckles' has necessitated that courts define the term. While the new type of metal knuckles might fall under that definition: `A weapon worn on the hand for the purposes of offense or defense, so made that in hitting with the fist considerable damage is inflicted.' People v. Deane, 259 Cal.App.2d 82 at 87 note 6the bill would eliminate any doubt on this question as it specifically defines `metal knuckles' as including the new weapon.

"(d) Broadness of the statutory language
"The proposed definition would also cover any ring including a gold wedding band because a ring would `protect the wearer's hand' and `increase the force of impact from the blow.'
"Should not the bill include the `for purposes of offense or defense' language from the court's description?" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2248 (1983-1984 Reg. Sess.) as amended Mar. 28, 1984, pp. 1-4, capitalization omitted.)
A subsequent Assembly committee analysis reflects the adoption of the Senate committee's suggestion to include "`for purposes of offense or defense'" in the definition, and repeats the points made in the Senate committee analysis. (Assem. Com. on Criminal Law and Public Safety, Analysis of Sen. Bill No. 2248 (1983-1984 Reg. Sess.) for hearing June 27, 1984, p. 1.) It too states that the bill was intended as a "minor modification to existing law," to ensure that "metal knuckles" would include the "new weapon." (Id. at p. 2.)
*30 (3) These materials are consistent with the ordinary meaning of "worn," and support David's claim that the Legislature did not intend the definition of "metal knuckles" to include such objects as bicycle footrests. The new weapon that caught the Legislature's attention, like ordinary metal knuckles, was made to attach to the hand. Unlike the traditional device, however, this weapon was sometimes used for striking with an open hand, using studs strapped to the palm, which explains the Legislature's specification of "in or on the hand." Moreover, when considering the scope of the new definition, the Legislature was concerned about including rings, which are "worn" on the hand. The committee analyses reflect no consideration of objects that might merely be grasped while throwing a punch, like rolls of coins, batteries, or bicycle footrests.[5] Indeed, had such a broad expansion of the common law understanding of "metal knuckles" been contemplated, the analyses would not have described the proposed legislation as a "minor modification" of existing law.
(4) Therefore, notwithstanding the Legislature's use of alternative phrasing that includes not only striking implements but also those that merely reinforce the fist, we conclude that a cylindrical object that cannot be "worn . . . in or on the hand" does not qualify as "metal knuckles" under section 12020, subdivision (c)(7). We do not, however, hold that an object must necessarily attach to the hand in a particularly secure fashion to meet the statutory definition. The statutory language is flexible, and implements that are fitted to the hand, or wrapped around it, may qualify as metal knuckles.
David asks us to disapprove In re Martin Alonzo L. (2006) 142 Cal.App.4th 93 [47 Cal.Rptr.3d 316], which affirmed an order finding a minor guilty of possessing metal knuckles in the form of a leather wallet with inch-long spikes embedded along one edge, so spaced as to fit between the fingers if the wallet were held in the fist. (Id. at p. 95.) We decline to do so. The minor there did not claim that the wallet failed to meet the statutory definition. The Court of Appeal considered only his argument that the evidence failed to establish the mental state required for guilt. (Id. at pp. 96-97.) Furthermore, the wallet described by the court was more similar to traditional metal knuckles than is a bicycle footrest, and bore some resemblance to the "new *31 weapon" mentioned in the legislative history reviewed above. The minor conceded its status as "metal knuckles" under section 12020. We express no view on that subject, noting only that a variety of devices may fall within the definition of section 12020, subdivision (c)(7).

III. DISPOSITION
We reverse the Court of Appeal's judgment.
George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.
NOTES
[1] The footrest actually measures four and one-half inches in length. Its diameter is a little over an inch and one-half. Such devices are made to be installed on threaded posts on each side of a wheel hub.
[2] Further statutory references are to the Penal Code.
[3] "Ballentine's Law Dictionary (2d ed. 1948): `A weapon used for offense and defense, worn upon the hand to strike with as if striking with the fist. When first known and used, the weapon was commonly made of brass, but [it] is now made of steel, platinum or other heavy metal, as well as brass, but it retains the name of brass knuckles, no matter of what material it is made.'

"The Britannica World Language Dictionary (1958 ed.): `A device of metal, fitting over the knuckles, used as a protection for them in striking and to add force to the blow.'
"Webster's New Twentieth Century Dictionary (2d ed.): `Linked metal rings or a metal bar with holes for the fingers, worn for rough fighting.'
"The Random House Dictionary of the English Language (1966): `A band of metal with four finger holes that fits over the root knuckles of the hand, used for increasing the effect of a blow from the fist.'
"Black's Law Dictionary (4th ed. 1951): `A weapon worn on the hand for the purposes of offense or defense, so made that in hitting with the fist considerable damage is inflicted.'
"Thorndike-Barnhart Comprehensive Desk Dictionary (1952): `A protective metal device for the knuckles, used in fighting.'" (People v. Deane, supra, 259 Cal.App.2d at p. 87, fn. 6.)
[4] The most relevant example provided in the Oxford English Dictionary is from 1749, in the Earl of Chesterfields's Letters to His Son: "His cane (if unfortunately he wears one) is at perpetual war with every cup of tea or coffee he drinks." (20 Oxford English Dict., supra, at p. 47.) We doubt that the drafters of section 12020, subdivision (c)(7) had in mind colloquialisms of the sort employed by the Earl of Chesterfield. The only other example on point is equally archaic, from an obscure 1819 source: "Both sexes . . . wear an umbrella in all seasons." (20 Oxford English Dict., supra, at p. 47, citing D.B. Warden, Acc. U.S. III 219.)
[5] We note that such items may, on sufficient proof, be deemed instruments of the crime of assault "with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." (§ 245.) It is established that "objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (People v. Aguilar (1997) 16 Cal.4th 1023, 1029 [68 Cal.Rptr.2d 655, 945 P.2d 1204]; see 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against the Person, § 47, pp. 671-672.)