Filed 10/29/24  P. v. Ryan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C099249 |
| Plaintiff and Respondent, | (Super. Ct. No. P18CRF0103) |
| v. | |
| JOSEPH STEPHAN RYAN, | |
| Defendant and Appellant. | |

Defendant Joseph Stephan Ryan pleaded no contest to assault with a deadly weapon and domestic battery.  The trial court granted him probation for four years.  After defendant admitted violating probation twice before, the trial court found him in violation of probation a third time.  The court then recused itself prior to defendant's sentencing for reasons suggesting the judge had appeared on behalf of the People in a prior hearing involving defendant.  A different judge sentenced defendant to two years in prison.

On appeal, defendant alleges the trial court erred in finding him in violation of his probation pointing out that, when doing so, the court utilized the wrong burden of proof.  He also alleges he did not receive a fair hearing because the judge who handled the probation revocation hearing was not impartial.

1

We will reverse the order revoking probation and terminating defendant's probation, vacate the resulting sentence, and remand the matter to the trial court for a new probation revocation hearing due to the trial court's use of the incorrect burden of proof. As a result, it is unnecessary to resolve defendant's second argument.

## I.  BACKGROUND

In a complaint, defendant was charged with assaulting N.J. with a deadly weapon and inflicting corporal injury on L.J., a cohabitant or person in a dating relationship with defendant.  (Pen. Code,[1] §§ 245, subd. (a)(1), 273.5, subd. (a).)  It also alleged defendant personally inflicted great bodily injury on N.J.

Briefly, N.J. learned defendant had punched defendant's girlfriend, L.J., in the face.  When N.J. confronted defendant about this, the two got into a fight and defendant stabbed N.J. three times causing him to be hospitalized.  Pursuant to a plea agreement, defendant pleaded no contest to assault with a deadly weapon and inflicting corporal injury on a cohabitant or person in a dating relationship.  (§§ 245, subd. (a)(1), 273.5, subd. (a).)  The agreement called for him to be placed on probation for four years.  As agreed, the trial court granted defendant formal probation for four years and required that he enroll in a batterer's treatment program.

In June 2019, the probation department filed a petition to revoke defendant's probation because he failed to report to probation, failed to attend a batterer's treatment program, and failed to keep probation advised of his location.  In October 2019, the People filed a separate petition to revoke defendant's probation on the grounds he was driving on a suspended license.  (Veh. Code, § 14601.1.)

At the hearing on these petitions, defendant admitted the violations of probation. The trial court found defendant in violation of the terms of his probation and reinstated him on the condition defendant spend 60 days in jail.

---

[1]  Further undesignated statutory reference the Penal Code.

2

In December 2019, probation filed another petition to revoke defendant's probation because he failed to report to probation, failed to attend a batterer's treatment program, and failed to keep probation aware of his location. At the hearing on this petition, defendant again admitted the violations of probation. The trial court again found defendant in violation of the terms of his probation and reinstated it on the condition defendant spend 45 days in jail.

In July 2020, probation filed another petition to revoke defendant's probation because he failed to report to probation, failed to attend a batterer's treatment program, and failed to keep probation aware of his location. In September 2020, the People filed a petition for the revocation of defendant's probation. The People's petition alleged defendant violated the condition that he obey all laws because "probable cause is established" that he possessed methamphetamine, a baseball bat, and a Taser. (Health & Saf. Code, § 11377, subd. (a); §§ 22210, 22610, subd. (a).) As relevant here, section 22210 outlaws the possession of a "weapon of the kind commonly known as a billy."

These two petitions came on for a contested hearing in 2022. The record reflects the trial judge who heard the contested hearing regularly disclosed that her spouse worked for the district attorney's office and received no objections to her hearing the matter following this disclosure.

At the hearing, the probation officer testified defendant failed to report regularly to probation. Although he had reported approximately five times previously, he had not reported since the last time he was released from jail. The probation officer was not able to contact defendant because he was unaware of defendant's whereabouts. The officer testified he had not received proof defendant had enrolled in a batterer's treatment program but the last time he had inquired about the batterer's treatment program was prior to defendant's most recent release from jail.

A deputy sheriff testified he made a traffic stop on defendant due to a cracked windshield and expired registration. A subsequent search of the car revealed a little league baseball bat that was a "27-inch drop 10 bat." In the driver's side door in a magazine pouch, the deputy found a working Taser. In the trunk, the deputy found a sunglasses case that had a small amount of presumptive positive methamphetamine. The trial court received photographs of the bat, the Taser, and the methamphetamine into evidence.

The deputy testified defendant said he used the baseball bat for baseball and had just retrieved it from storage. The deputy questioned this statement because the bat was 27 inches and only weighed 17 ounces which would be a child's bat. By contrast, an adult would get a 33- to 34-inch bat that weighed about 31 ounces. As to the Taser, the deputy testified defendant told the deputy he knew it was there but it was not his.

At the conclusion of the evidence, the trial court noted it considered the evidence before it and defendant's prior violations of probation, and the requirement he complete a 52-week batterer's intervention program. The court observed: 1) there was no proof in the trial court's file regarding defendant's enrollment in the program, and 2) the probation officer's testimony that he had not been made aware of any enrollment or participation. The court further found the evidence established defendant failed to report to probation and it was unaware of his whereabouts. As a result, the trial court found defendant in violation of each of the three counts as reflected in the probation department's petition.

As to the People's petition, the trial court stated, "the court does not find that the People have met their burden of proof as to defendant's violation under Health and Safety Code section 11377.· The court did not receive any information that it was of a usable quantity that was possessed as to the presumptive positive methamphetamine. [¶] . . . [¶] The court does find that the evidence did establish that the defendant violated the terms of his probation pursuant to Penal Code section 22210, in that the evidence did support that the defendant had a bat that was a 27-inch drop 10 Little League or child's bat[,] that

4

it was possessed in his vehicle at his driver's side door, down on the left-hand side down near the floorboard.  [¶]· *The court finds that the burden of proof in this matter is probable cause, and the People have met that burden of proof as to that violation.*  [¶] The court finds the defendant in violation of his probation based on failure to obey all laws and the evidence establishing the 22210.  [¶]  As to the allegation regarding 22610, subdivision (a), the Court finds the evidence has established that violation.· The People have met their burden of proof.  [¶]  The defendant is convicted of a felony in the case currently before the court, and he did, by the evidence, possess a Taser.· The evidence also establishes the defendant knew the Taser was there, although he denied that it was his.  [¶] ·Therefore, the court finds the defendant in violation of his probation term that he obey all laws, based on those two allegations."  (Italics added.)

After that hearing but prior to sentencing, the court minutes reflect:  "After further review of the file – [the trial judge] recuses herself pursuant to 170.1 PC due to appeared on the underlying case for the People.  [¶]  [The trial judge] refers the matter to the Presiding Judge for reassignment."

A different judge sentenced defendant to two years in prison for the assault with a deadly weapon count with credits of 187 days and a concurrent one-year county jail term for the infliction of corporal injury on a cohabitant or person in a dating relationship. (§§ 245, subd. (a)(1), 273.5, subd. (a).)

Defendant filed a timely notice of appeal.

## II.  DISCUSSION

Defendant argues the trial court erred in applying the probable cause burden of proof to determining whether defendant violated his probation by possessing a "billy" and the Taser.  We agree.

*Forfeiture of the Claim*

The People first argue defendant forfeited this argument because he failed to raise it in the trial court.  "Ordinarily, a criminal defendant who does not challenge an

5

assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*In re Sheena K.* (2007) 40 Cal.4th 875, 880.) We retain the discretion to review matters not raised by trial counsel. "[F]orfeiture of a claim not raised in the trial court by a party has not precluded review of the claim by an appellate court in the exercise of that court's discretion. [Citations.] Thus, an appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.' [Citation.] [¶] The appellate courts typically have engaged in discretionary review only when a forfeited claim involves an important issue of constitutional law or a substantial right." (*Id.* at p. 887, fn. 7.) We conclude the trial court's potential misapprehension of the burden of proof recited on the record in this revocation hearing goes to the heart of these proceedings and affects defendant's substantial rights. Thus, we will exercise our consideration of the argument on the merits.

*Probation Revocation Hearing*

We review the trial court's revocation of a defendant's probation for an abuse of discretion. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.) A trial court abuses its discretion if it applies an incorrect legal standard in the exercise of that discretion. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225.)

Section 1203.2, subdivision (a) authorizes a trial court to revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses." (See *People v. Rodriguez* (1990) 51 Cal.3d 437, 439.) As conceded by the People, a trial court is required to use the preponderance of the evidence standard to find a defendant violated a term of his probation. (*Id.* at p. 447; *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.)

The preponderance of the evidence standard requires the trial court to conclude the allegation is more likely than not true. (*People v. Gregerson* (2011) 202 Cal.App.4th

306, 318-319.)  By contrast, the probable cause standard merely requires the court to conclude the evidence establishes such a state of facts as would lead a person " ' " ' "of ordinary caution or prudence . . . to believe and conscientiously entertain a strong suspicion of the guilt of the accused." ' " ' "  (*Id.* at pp. 318-319.)  The preponderance of the evidence standard thus requires more certainty and carries a higher burden for the People than the probable cause standard.  (*Id.* at p. 319.)  The trial court's application of this lower standard of proof was error.

The People suggest the trial court may have simply misstated the burden of proof it used when it said "probable cause" was the relevant burden of proof.  We do not accept this argument for the simple reason that it was the People that introduced the erroneous standard to the trial court by its own pleading.  Thus, the record demonstrates that the People raised and argued the lesser burden and the trial court accepted it as the standard. We cannot conclude the trial court merely said one thing when it meant another.

Defendant argues he need not demonstrate prejudice, but even if he must, prejudice is demonstrated under either the *Chapman v. California* (1967) 386 U.S. 18 or *People v. Watson* (1956) 46 Cal.2d 818 standards.  We conclude while this error is serious, it is not a fundamental error going to the heart of the proceedings.

We find the discussion in *People v. Garrison* (2021) 73 Cal.App.5th 735, instructive as to the nature of this error.  There, defendant argued the trial court's application of the incorrect burden of proof in a postjudgment resentencing proceeding was structural error making a prejudicial error analysis irrelevant.  (*Id.* at p. 745.)  The appellate court disagreed, " 'Structural defects requiring automatic reversal of a criminal conviction typically involve basic protections without which " 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " [Citations.]  These include total deprivation of the right to counsel, denial of the right of self-representation, trial before a judge who is not impartial, unlawful exclusion of members of the

7

defendant's race from a grand jury, and denial of the right to a public trial.' " (*Id.* at pp. 745-746.)  The appellate court concluded the concept of structural error did not apply in a postjudgment proceeding because that hearing was not a criminal trial, the error did not affect the framework in which a trial proceeds, and the error could be quantitatively assessed.  (*Id.* at pp. 746-747.)

Similarly, here, probation revocation proceedings are not part of the criminal proceedings.  (*People v. Gray* (2023) 15 Cal.5th 152, 163.)  While the defendant has due process rights, he is not entitled the full panoply of rights that are due to a criminal defendant.  (*Ibid.*)  We further conclude we can qualitatively assess the impact of this error on the findings at issue.  Thus, we turn to a harmless error analysis.

Under *People v. Watson*, *supra*, 46 Cal.2d at page 836, an error cannot be deemed harmless, "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  We conclude the error in defendant's case is not harmless even under this less stringent standard, and we need not determine whether the People could demonstrate the error was harmless under the more stringent standard of *Chapman v. California*, *supra*, 386 U.S. at page 18.

On this record, the trial court's findings as to the two criminal violations are relatively close calls that turn on the believability of defendant's statements to the deputy.  To prove that a lawful item like a bat was a "billy," the law requires "evidence tending to show that, at the time and place of the alleged illegal possession, the possessor contemplated the unlawful and not the lawful use." (*People v. Deane* (1968) 259 Cal.App.2d 82, 89.)  Defendant's possession of a child's bat in his car, without more, is not overwhelming evidence that defendant contemplated the unlawful use of the bat.  Thus, we conclude it is reasonably probable the trial court might have reached a result more favorable to defendant if it had applied the correct and higher standard of proof.

8

The same is true as to the possession of the Taser. The trial court could have chosen to (or not to) credit the deputy's statement about defendant's knowledge of the presence of the Taser in the car if the trial court had applied the correct standard of proof.

These potential different outcomes are not merely conjecture given the trial court's decision not to find defendant was in violation of probation based on his alleged possession of methamphetamine even under the lesser standard of proof. Finally, if the sentencing court had been faced with findings of fewer violations (both in number and severity) of probation, it is reasonably probable the sentencing judge, a different judge than the one who heard the evidence presented in the probation violation hearing, would have imposed a sentence more favorable to defendant. We will thus remand the matter to enable the trial court to hold a probation revocation hearing utilizing the correct burden of proof. We express no opinion on what the outcome of any such hearing should be.

### III. DISPOSITION

The order revoking and terminating defendant's probation is reversed, and the resulting sentence is vacated. The cause is remanded for the trial court to hold a probation revocation hearing utilizing the correct standard of proof.

/s/
WISEMAN, J.*

We concur:

/s/
ROBIE, Acting P. J.

/s/
MESIWALA, J.

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9